## THE BRIG ODORILLA AND OWNERS v. JOHN BAIZLEY.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILADEL-
PHIA COUNTY.

Argued April 12, 1889—Decided October 7, 1889.
[To be reported.]

1. While the declarations of an alleged agent are not evidence of the ex-
istence of the agency, continuous acts performed by him in and about
the business of his alleged principals and their recognition of these acts,
are evidence from which an agency may be fairly inferred by a jury.
2. A vessel in course of construction, and not yet registered and enrolled
under the laws of the United States, cannot, perhaps, have a master or a
managing owner technically so called; but one owner, having the su-
perintendence and control of the construction, with power to bind his
fellows, may well be considered the managing owner or even the mas-
ter, in the general sense of these terms.
3. If a person furnishing materials for the construction of a vessel sue
and recover a judgment against the contractor of the vessel for the
value of the materials, such judgment is not an estoppel precluding a
subsequent proceeding in rem against the vessel under the act of June 13,
1836, P. L. 617: Non constat that both contractor and vessel may not
be liable.
4. When the claim of a libellant of a vessel to recover under said act for
materials so furnished is rested upon an alleged express agreement of
the owners to pay for them, and not upon the original order for the
materials given by the builder, the question whether, under the contract
between the owners and the builder, the title was in the former or in
the latter at the time the materials were furnished, is immaterial.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, and
McCOLLUM, JJ.

No. 265 January Term 1889, Sup. Ct.; court below, No.
3081 December Term 1873, old D. C.

On January 28, 1874, John Baizley filed a libel under the
act of June 13, 1836, P. L. 617, by which, as amended on
December 30, 1884, by leave of court, it was averred that the
plaintiff, at the special instance and request of one Captain
Holland, master and managing owner of the brig Odorilla, had

furnished materials and performed work and labor in the repairing, fitting, furnishing and equipping of said brig, then lying at a wharf at Philadelphia where she still remained; setting forth the amount of libellant's claim as $1,496.77, and praying an attachment of the vessel, condemnation and sale thereof. An attachment was thereupon issued as prayed for.

On February 10, 1884, A. H. Cain, as managing owner of said vessel, for himself and as agent of the other owners, filed an answer to the libel, averring that the respondents, all of Philadelphia, were then and at the time the work and materials were alleged to have been furnished by the plaintiff, the sole and exclusive owners of said vessel; that neither the owners nor the master thereof ordered said work and materials, and at the time a portion thereof was alleged to have been furnished the vessel was not within the commonwealth; that the respondents had entered into a written contract with Worden & Evans of Delaware for the building of said vessel for $22,000, payable in instalments, by the provisions of which contract the title to the vessel as her building progressed was to be in respondents; that she was built in the state of Delaware, but in order more conveniently to complete their said contract, the contractors brought her hull to Philadelphia; that all work and materials alleged, prior to December 19, 1873, were done and furnished in the state of Delaware, and all the alleged work and materials, whether done and furnished while the vessel was lying in the state of Delaware or in the state of Pennsylvania, were done and furnished on the order and credit of said contractors, Worden & Evans, and not on the order or contract of the respondents; and that by reason of the premises the court did not have jurisdiction to enforce the libellant's claim against the respondents' vessel.

To this answer a replication was filed by the libellant and issue joined, to be tried by a jury under said act of assembly.

At the second trial, March 21, 1887, the following facts were shown:

On March 15, 1873, the firm of Worden & Evans, of Smyrna, Delaware, ship-builders, entered into a written contract with A. H. Cain, William S. Holland and others of Philadelphia, by which Worden & Evans agreed to build and complete at their ship-yard in Smyrna, for the parties of the other part, a brig

of certain dimensions and according to certain specifications set forth in the contract, certain parts of the vessel to be of such dimensions and design as the captain might direct, and to deliver the same at the port of Philadelphia on or before October 15, 1873, for which they should be paid $22,000 in instalments as the work progressed. The contract further provided that if Worden & Evans should fail in business or be unable to complete their contract, the other parties might take possession of the brig, and cause the same to be completed by other persons, Worden & Evans to be responsible for such sums as should be advanced for this purpose, over and above the contract price; and that from and after the payment of the first instalment under the contract the brig should be deemed and continue to be, in every respect and for every purpose, the property of the parties of the second part.

Under this contract Worden & Evans proceeded to build at Smyrna the brig named in the libel, but before its completion it was removed to Philadelphia. The plaintiff, who was the proprietor of a blacksmith shop in Philadelphia, furnished for this vessel, while she was still at Smyrna, certain materials consisting of iron work, and furnished other like materials after she was brought to Philadelphia, and claimed a lien under the act of assembly for such of said materials as had been furnished within the state of Pennsylvania.

To substantiate his claim, the plaintiff called as a witness his son, Rudolph Baizley, the superintendent of his shop, who testified in substance that Captain William S. Holland was superintending the construction of the vessel and reporting to the owners, and had told the witness that he was a part owner himself; that after the vessel was brought to Philadelphia, Worden & Evans having become financially embarrassed, his father stopped work and refused to furnish anything more on the vessel; that, at that time, of the work and materials for which a lien was claimed only a small portion, amounting to $2.90, had been furnished; that Captain Holland called at the shop to ascertain why they were not going on with the vessel and was informed by the witness and his father that there was some trouble with Worden & Evans and the plaintiff wanted to be sure of getting his money; that Captain Holland then made the remark to go on with the work and he would see

that plaintiff got his money : " He simply said, go on with the work ; that we would be paid, and we presumed he was speaking for the owners of the vessel ; " that the witness had a talk with Captain Cain, one of the owners, who was since dead, about furnishing these goods and paying for them, and Captain Cain said the money would be all right, that they had good security ; that the plaintiff went on and furnished the rest of the iron work, Captain Holland frequently coming and giving orders as to sizes, shapes, etc. ; that the dimensions of the work which the witness had shipped to Delaware were also given by Captain Holland. John C. Liley, the foreman of plaintiff's shop, was also called for the plaintiff, and testified that he had seen Captain Holland more than once in plaintiff's shop, and had also seen him aboard the brig while work upon her was in progress at the Christian street wharf, Philadelphia. These were the only witnesses called by the plaintiff to make out the contract upon which he relied.

Captain William S. Holland, testifying for the owners of the vessel, directly and decidedly denied the making of any contract or promise for himself or for any of the owners, to pay the plaintiff's claim or any part thereof. He testified further that he was one of the original owners of the Odorilla ; that he was not the master of the vessel at the time the plaintiff was furnishing iron-work for her, and did not become so until she was subsequently enrolled and registered, although he was the captain referred to in the building contract, and the vessel was built for him to sail as master ; that at the time the materials were being furnished by the plaintiff, he, the witness, had no authority to make a contract binding the owners of the vessel, his duty being simply to see that the brig was built according to the contract ; that when the vessel was at Smyrna he came up to Philadelphia with some measurements and said to the plaintiff : " These are the dimensions of the chain plates and chain bolts. I am acting as a messenger—as a messenger boy ; " that when the brig was brought to Philadelphia the owners still had about $4,000 of the contract money in their hands, some of which, at least, was paid to other persons than Worden & Evans, for completing her, he making one payment and Captain Cain making a number of payments out of it.

The defendants put in evidence the record of a suit brought

by John Baizley against Worden & Evans to No. 191 March Term 1874, in the District Court of Philadelphia, wherein a judgment was recovered by the plaintiff against Worden & Evans which embraced the same claim set out in the libel filed in the present case, the plaintiff's statement of claim in said action at March Term 1874, purporting to give a copy of the plaintiff's book of original entries, headed: "Messrs. Worden & Evans, for brig Odorilla, to John Baizley, Dr."

At the conclusion of the testimony, the court, ALLISON, P. J., delivered a charge in which, after reviewing the testimony, he submitted to the determination of the jury the question whether the promise of payment on the part of the owners of the Odorilla, as testified to by Rudolph Baizley, was in fact made, and concluded by answering the following points presented by the defendants:

1. That in no case can the plaintiff recover for the price of any goods except those delivered to the vessel within this commonwealth.

Answer: Affirmed.

2. That under the terms of the contract for building the vessel, the defendants in this case, and not Worden & Evans, were owners of the vessel when the materials sued for were furnished.

Answer: Well, I say to the jury on that point that it is entirely immaterial. Perhaps it might be a question of fact. It is entirely immaterial whether the defendants were owners of the vessel, or Worden & Evans, in the sense that they were contractors, parties with whom the original contract was made, whether they are to be regarded as owners; because whether the contract was made by either the party for whom the vessel was built, or an owner in the sense of a contractor, is entirely immaterial. The question is, did the real owners, or Worden & Evans, enter into a contract with the plaintiff under and by virtue of which these materials were furnished. Now I shall qualify that, perhaps, by saying that the plaintiff does not claim under the original contract of Worden & Evans, and does claim to recover under an express contract, entered into between the owners of the vessel and Mr. Baizley, plaintiff in this suit, after the vessel was brought to Philadelphia; so that the question of the original contract between these parties, so far as the plaintiff's right to

recover in the present case is concerned, may be considered as really out of the case.[1]

3. To entitle the plaintiff to recover, he must show that defendants in this case, and not Worden & Evans, ordered the goods to be furnished the vessel.

Answer: Affirmed, upon the case as the plaintiff presents it; that is, he rests upon the express contract which he says was entered into between plaintiff and the owners after the vessel came to Philadelphia.

4. That there is no evidence that W. S. Holland was master or managing owner of the vessel at the time the goods were ordered or furnished.

Answer: I will not affirm that proposition, because there is evidence upon the part of Captain Holland himself that this vessel was built for him to sail in as captain or master; that that was the express understanding when the contract was entered into between the owners and Worden & Evans, that the vessel was to be for him as master. And he says he did superintend the building of that vessel. Now, with the contract or understanding which had been entered into, that he was to be regarded as the captain or master, I leave it to you as a question of fact, whether under the evidence, whether by the agreement of the parties and understanding entered into between the persons for whom this vessel was built and Captain Holland, there was that agreement which began at the inception of this vessel, which was to put him in charge of the vessel from its beginning as the captain and master—the managing master, but not sailing master.[2]

5. That Holland had no implied authority to bind the owners or the vessel for those materials; and that no express authority has been shown by the evidence to have been given him for that purpose.

Answer: I leave that as a question of fact for the jury. I would be inclined to affirm it, as it is Captain Holland's direct testimony that he had no such authority. He says he was not authorized to bind the owners; but there is other testimony in the case, and Captain Holland's own testimony, to which I have just referred, as to the circumstances under which he was put in charge of this vessel, at least as superintendent, as he calls it, or to superintend the construction of this vessel from the

time that Worden & Evans began to build her. I leave that under the evidence as a question of fact for the jury.[3]

6. The fact that plaintiff, after instituting this suit against the vessel, began another suit, in personam, against the contractors, Worden & Evans, and took judgment against them for the price of the identical goods mentioned and claimed for in the libel in this suit, is a bar to his recovery in this action. A fact once judicially found estops the party in whose favor it was found from denying it. The fact found by that judgment was that the goods in question were ordered by Worden & Evans and furnished on their credit.

Answer: I decline to affirm that proposition.[4]

The verdict of the jury was in favor of the plaintiff for $1,420.74. The respondents then moved for a new trial and in arrest of judgment. The court, BIDDLE, J., without opinion filed, discharged the rule for a new trial but sustained the motion in arrest of judgment, whereupon the plaintiff took out a writ of error to No. 176 January Term 1888, Sup. Ct., the decision upon which is reported in 121 Pa. 231. In said decision the Supreme Court, holding that as the record stood the plaintiff was entitled to judgment on the verdict, reversed the order arresting the judgment and entered judgment for the plaintiff for $1,420.74, with interest from the date of the verdict, and costs. The record having been returned and filed in the court below, with remittitur from the Supreme Court certifying this judgment, "The Brig Odorilla and Owners" took this writ, specifying that the court erred:

1–4. In the answers to defendants' points.[1 to 4]

*Mr. Edward F. Pugh* and *Mr. Henry Flanders*, for the plaintiffs in error:

1. Under § 1, act of June 13, 1836, P. L. 616, the libellant must show that the debt was contracted by the master or owners. He claims that Holland ordered this work as master and managing owner. But there is not a word of proof that Holland was managing owner, nor that Holland was then master. If the Odorilla had a master and managing owner at all, then she had passed under the jurisdiction of the United States, and the state court could not enforce a lien upon her by proceedings in

rem; for the implied powers of the master and managing owner do not attach until the vessel has been registered and enrolled under the act of congress approved December 31, 1792, 1 U. S. Stat. at Large, 287, 288 : White's Bank v. Smith, 7 Wall. 646. If she was subject to the jurisdiction of the state courts, no act of Holland could bind her: (*a*) He could not bind her as master, because an incomplete structure, intended to become a vessel, can have no master; (*b*) A managing owner exists only under the acts of congress with reference to a vessel of the United States. Besides, the act of assembly does not contain the phrase, managing owner. It requires the contract to be made by the master or owners, the evident intention being that in case of repairs to a vessel regularly documented and engaged in trade, the master may make the contract, while if a vessel is to be built the owners, and all of them, shall make it.

2. If it be proved that Holland, as one of the owners, ordered these materials, etc., his act will not bind the vessel in rem, nor bind any of the owners in personam but himself. The owners of a vessel are not partners, but co-tenants: 1 Pars. on Ship. and Adm. 90; Desty on Ship. and Adm. § 31 ; Paynter v. Paynter, 7 Phila. 336 ; Knox v. Campbell, 1 Pa. 366. There is neither allegation nor proof that any of the other owners made or authorized the making of any contract. In some states authority is given to a part owner, and in others, to an agent, to bind the vessel for such a debt. Such statutes are strictly construed ; the part owner can bind only his share and the agent must be such an agent as the act contemplates : Childs v. The Brunette, 19 Mo. 518. There is no such statute in Pennsylvania, and there must be proof of express authority from the co-owners. Holland's declarations are no proof of his agency: Central Penn. Tel. & Sup. Co. v. Thompson, 112 Pa. 118. This was the view taken by BIDDLE, J., upon the first motion for a new trial. The evidence being almost exactly the same as on the second trial, he held the defendants not liable. But there was no sufficient evidence to submit to the jury that Holland ordered this work, either as master or owner. The only witness who pretends to connect him with a contract is Rudolph Baizley, and his testimony amounts to no more than that Holland was in some way superintending the work, and expressed to him a belief that it would be paid for.

Arguments.

3. By suing Worden & Evans for the same identical materials and work sued for in this libel, the plaintiff is estopped from denying that he furnished them on the order of Worden & Evans, and from affirming that they were furnished on the order of the defendants or their agent. On the faith of a statement purporting to be a copy of his book of original entries, in which these identical materials and work were charged to Worden & Evans, he obtained a judgment against them. Under the statute, the whole question is, who contracted for the material and work, and to whom was the credit given? This question is res judicata, for it was directly in issue in the common law suit. The foundation of his suit against Worden & Evans was the giving of credit to them. The judgment in that suit may be set up as an estoppel in this proceeding in rem: Goodrich v. Chicago, 5 Wall. 566; The Tubal Cain, 9 Fed. R. 834, 836. The judgment against Worden & Evans shows that they contracted the debt; but they did this as contractors and not as owners. The libelant is estopped by the allegations of his libel from saying that they were owners. It is only a debt contracted by the master or owners, that binds the vessel and gives rise to the proceeding in rem.

*Mr. Henry R. Edmunds* (with him *Mr. John A. Scanlan*), for the defendant in error:

1. A contract with the managing owner is a contract with the owners. He is their agent. The argument for defendants on this point is the same that was made when the case was here before and has been disposed of by the former opinion of this court. There is both allegation and proof that the owners ordered the work and material. The evidence shows that both Holland, owner, and Cain, the alleged managing owner, told the plaintiff to go on with the work and he would be paid, and were present while it was being done, Holland bringing orders, superintending and reporting to the owners. Ostensibly Holland was acting for himself and co-owners. He appeared so to the world and to Baizley, upon whom it would be a fraud for the owners to deny his authority after taking and keeping the work and materials.

2. The suit and judgment against Worden & Evans do not work an estoppel. The statement negatives the idea of an

exclusive credit to Worden & Evans, and shows that credit was given to the vessel and owners, the charge against Worden & Evans being "for the brig Odorilla." Worden & Evans were the owners for all purposes of lien: Scull v. Shakespear, 75 Pa. 297; The Reany Engineers, 9 Phila. 620. This being so there is no substantial difference between that statement and the bill of particulars in this case, charging the brig Odorilla and owners. It is true, we proceeded at the trial on a contract made directly with the owners. Had we proceeded on the contract with Worden & Evans, the vessel would have been liable.

3. A judgment in personam against the contractor does not bar a lien; they are concurrent remedies: Rush v. Fisher, 8 Phila. 44; Hommel v. Lewis, 104 Pa. 465. The question here is not whether credit was given to the contractor or to the owner, but whether the credit of the construction was relied on: Hommel v. Lewis, supra. The vessel is liable unless the plaintiff expressly agreed to look to the contractors alone: Church v. Allison, 10 Pa. 413. The judgment against the contractor in no way militates against the right to recover from the present defendants. Such judgment was in their relief; if it had been paid, their engagement would have been discharged; if they pay Baizley, they shall have it marked to their use. Baizley had a right to hold, as he has done, the vessel, the owners and the contractors all for his claim.

OPINION, MR. JUSTICE CLARK:

It is plain that the words "master and managing owner," as they are contained in the libel, were not used in any merely technical sense, signifying that the Odorilla was registered and enrolled and had passed under the jurisdiction and control of the United States government. In a purely technical sense, perhaps she could have a master and a managing owner, properly so called, only by virtue of the laws of the United States; but she had owners, in the general sense of the word, from the time the work of construction and equipment began, and if any one of the owners had the superintendence and control of the construction, with power to bind his fellows, he might well be considered the managing owner or even the master, in the general sense of these terms. There is evidence to the effect

that William S. Holland was in charge of the construction of this vessel whilst she was at the Christian street wharf, in Philadelphia, and for some time before, when she was at Smyrna, in the state of Delaware. Rudolph Baizley says that Holland superintended the work and reported to the owners, and that he said he was part owner of the vessel. It appears further, by the testimony of Holland himself, as well as by the contract with Worden & Evans, that he was, in fact, part owner. The witness further says that Worden & Evans, the contractors, became financially embarrassed, and that his father refused to proceed with the construction, until Holland told him to go on with the work and he would see that he got his money. He further states that Captain Cain, who the defendants admit was managing owner, said to the plaintiff that his money would be all right for they had good security. He says, also, that Captain Holland frequently brought orders to the plaintiff's store for the work, for sizes, shapes, etc., both before and after the vessel was brought to Philadelphia; that Holland gave almost all the orders. Holland's declarations, it is true, are not evidence of his agency; but his continuous acts in and about the owners' business, and their recognition of these acts, are evidence from which his agency may be fairly inferred. The testimony, certainly, is not strong, but we cannot see how the court could disregard the inferences which might reasonably be drawn from the proof. There is evidence to show that at the time Worden & Evans ceased to comply with their contract, there was $4,000 of the price still remaining in the hands of the owners, and this sum they afterwards spent in the employment of others to complete the work, some portions of it being contracted for by Captain Cain and some by Captain Holland. In view of this evidence and of the facts alleged, as already referred to, that Holland was part owner of the vessel, of which he was to be the captain and master; that he superintended the work and reported to the owner; that he gave the orders and agreed that he would see that the plaintiff got his money; and that the work was done on the faith of this promise; and, further, that Captain Cain, who, the defendants admit, was the managing owner, gave a similar promise to the plaintiff, we cannot see how the court could have withdrawn the case from the jury; for if all this were true the liability of

the owners was established, and the lien of the debt attached to the vessel under the act of 1836. Of course, there was counter-vailing proof of the strongest character, but that was for the jury. We have nothing to do with the veracity of witnesses, the conflict in the testimony, or the weight of the evidence; these questions were passed upon by the jury and the verdict is conclusive here. Nor can the judgment of Worden & Evans be set up as an estoppel here. The judgment, it is true, was upon a claim for the same debt, but this was a proceeding in rem, and the cause was presented only as against the vessel, under the act of 1836; non constat, because the contractors were responsible for the debt, that the vessel may not be responsible also. We cannot find fault with the answer of the court to the defendants' second point, as the plaintiff's claim to recovery here was not under any contract with Worden & Evans, although such a contract may have existed, but under an express contract entered into between the owners of the vessel and the plaintiff.

The judgment is affirmed.