# McElroy *v.* Glenn Kline Lumber Company, Appellant.

*Principal and agent—Independent contractor—Evidence.*

Where in an action of assumpsit it is sought to hold the defendant liable on a contract alleged to have been made by an agent, and the undisputed evidence shows that the relation between the defendant and the alleged agent, was under a written contract, and that the alleged agent was in truth and in fact an independent contractor, it is reversible error to submit to the jury the question of agency on evidence to the effect that the defendant had advanced to the contractor moneys in excess of what was due him, that the president of the defendant company had visited the work, had complained of the way in which it was being done, and had given orders which were, however, not obeyed, and that the secretary of the defendant had said after the contractor had quit work that he had a bargain to stand by him financially, but that "when the last bill for labor came in, he had to throw up his hands." Bellman v. Pittsburg, etc., Ry. Co., 31 Pa. Superior Ct. 389, distinguished.

Argued May 11, 1908. Appeal, No. 154, May T., 1908, by defendant, from judgment of C. P. Armstrong Co., Dec. T., 1905, No. 4, on verdict for plaintiff in case of H. H. McElroy v. Glenn Kline Lumber Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Appeal from judgment of justice of the peace. Before PATTON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $87.17. Defendant appealed.

394 McELROY v. GLENN KLINE LUMBER CO., Appellant.

Assignment of Error—Opinion of the Court.   [37 Pa. Superior Ct.

*Error assigned* amongst others was refusal of binding instructions for defendant.

*Floy C. Jones*, for appellant.—There was no sufficient proof of agency: Singer Mfg. Co. v. Christian, 211 Pa. 534; American Car & Foundry Co. v. Water Co., 218 Pa. 542; Lawall v. Groman, 180 Pa. 532; Whiting v. Lake, 91 Pa. 349; Relief Assn. v. Post, 122 Pa. 579; Long v. Ins. Co., 137 Pa. 335.

*E. O. Golden*, for appellee, cited: Bellman v. Ry. Co., 31 Pa. Superior Ct. 389; Stewart v. Climax Road Machine Co., 200 Pa. 611; The Odorilla v. Baizley, 128 Pa. 283; Maynes v. Atwater, 88 Pa. 496; Phillips v. Text Book Co., 26 Pa. Superior Ct. 230.

OPINION BY HEAD, J., October 12, 1908:

The right of the plaintiff to recover depended on his ability to prove, by competent and sufficient evidence, that one Metts, who employed him to render the services for which he claims, was the agent of and was acting for the defendant company. The undisputed evidence disclosed that the defendant, a corporation of the city of Pittsburg, had acquired the right to cut the timber from a tract of land in Armstrong county. That it then entered into a written contract with Metts, by the terms of which he agreed to cut, saw and deliver on board cars, or in boats as the defendant might direct, all of the timber on the tract. The timber was to be sawed or hewed in a skillful manner according to specifications and order of the company. The latter was to pay on the 15th of each month for ninety per cent of all lumber delivered, as provided, during the preceding month, at a rate per thousand specified, and the remaining ten per cent was to be held until the completion of the contract.

Had this action been between the parties to that written contract, and had either party, on the evidence in this record, undertaken to set up the relation of principal and agent, we think no one would deny that such a claim would be conclusively answered by the contract itself. There is no evidence that these parties by any affirmative action, ever undertook to modify the

relation between them thus established.  But the present plaintiff argues that, not having been a party to that contract, he is not thereby precluded from showing such a course of dealing between the defendant and Metts as would warrant the conclusion that the latter, with the knowledge and assent, express or implied of the company, had held himself out to the world as its agent, or that the company itself, by the admissions or acts of its authorized officers, had affirmed the existence of such relation.  If the correctness of this proposition be conceded how has the plaintiff discharged the burden he necessarily assumes in taking that position?

Metts, in execution of his contract, procured a saw mill, set it up on the tract, hired the plaintiff and a number of other men and started the work.  He was in personal charge, directed the men and his orders were followed.  The evidence does not show directly the extent of his financial ability, but as he was able to carry on the work only for a short time, it may be fairly inferred it was not considerable.  When the wages of the men became due Metts would send a list of their names with the approximate amount coming to each, excluding fractions of a dollar and sometimes odd dollars, to the office of the company, and it would send up a like number of its checks in the listed amounts, all payable to his order.  The aggregate sum of these checks was charged to Metts in his account as against the credits to which he would be entitled as the lumber was delivered.  These checks were endorsed by Metts and used in paying his men pro tanto.  How the odd balances were paid the record does not show.  By the time the work was stopped the company had, in this way, advanced upwards of $1,500 although it owed, under the contract, less than $900.

From these facts the plaintiff argues that the company was doing the work itself and that Metts was but its foreman, notwithstanding the contract to the contrary and the fact that it had no interest, directly or indirectly, so far as the evidence shows, in the saw mill, teams, wagons, and logging outfit necessary to carry on such work.

It further appears from the testimony that Robert Wolfe, the president of the defendant company, went on two different

occasions to the scene of operations. What he said and did on his first visit is thus stated by Lee Nalf, a witness for the plaintiff, whose testimony on this point is considerably stronger than that of the plaintiff himself: "He countermanded W. J. Metts' orders, and had us do as he said in cutting logs, in wasting timber. Q. Did you follow out Wolfe's instructions? A. No sir. Q. What did he say, if anything, about the Glenn Kline Lumber Co., in these operations? A. He said that W. J. Metts hadn't the whole thing to do there, that is all he said, that he would not have the timber wasted." This testimony, so far from proving that Metts was but a foreman, seems to us to strongly corroborate the idea he was an independent contractor, because had he been but a foreman, or had those employed by him believed they were working directly for and under the company, it is hardly possible the orders of its chief would have been received with so little respect.

It further appears that after Metts had quit and the work was stopped, Kestlar, the secretary of the company, came up to the tract and while there made a statement as to which the evidence is conflicting. Taking it as stated by the plaintiff himself "he said that he had a verbal bargain to stand by him (Metts) financially, but when the last bill for labor came in he had to throw up his hands." Upon this testimony, with some other relating to matters of minor importance not necessary to advert to, the learned trial court felt constrained, on the authority of Bellman v. Pittsburg, etc., Ry. Co., 31 Pa. Superior Ct. 389, to permit the jury to "take all of that testimony and see from it if you can (find) evidence convincing you that Mr. Metts was the agent or foreman of this corporation;" and for the same reason refused, after verdict, a motion for judgment for defendant n. o. v. We think that case was radically different from the one now before us. There the record was silent as to the existence of any relation between the company and Staub other than that of principal and agent. It was shown that the company maintained an office in Pittsburg with its corporate name on the door. That Staub "occupied this office for a long time and appeared to be in charge of it, attending to the business of the company." That several of the officers and directors had testi-

fied, in another proceeding, "that Staub was their agent." That after the plaintiff had been employed by Staub and was engaged in securing important rights of way for the company, the vice president of the company, recognizing his employment, wrote to him concerning the work he was doing, and that he frequently reported to Staub in the office, in the presence of stockholders and directors of the company. No other relation having been shown to which such a course of dealing could be referred, this court held a jury might properly and reasonably infer the existence of the relation of principal and agent.

In The Odorilla *v.* Baizley, 128 Pa. 283, Captain Holland was one of the owners of the vessel. He was the captain referred to in the building contract and the vessel was built for him to sail as master. The construction was superintended by him. When the original contractors failed the plaintiffs refused to proceed with their work unless assured it would be paid for. Captain Cain who, according to the admission of the defendants, was managing owner, directed them to proceed and they would be paid. Captain Holland gave a like assurance and he brought to the plaintiffs orders for the work, sizes, shapes, etc. It did not appear that he had any other interest in the vessel than that common to all the owners. The court held that if all these facts were found the liability of the owners was established and the lien of the debt attached to the vessel under the act of 1836.

In the case in hand it appeared from the written agreement of the parties that Metts was an independent contractor. The genuineness of this agreement was in no way assailed. There was not a particle of evidence that the parties to it ever undertook to enter into any different relation. The acts of the defendant already referred to were in no way inconsistent with the contract relation. Indeed as we have said, to our minds, they rather tend to corroborate the existence of that relation than to prove that Metts was but a foreman.

It not infrequently happens, in the every day transactions of life, that where an owner of property makes a contract for its improvement, he finds it necessary, in the early stages of the work, to furnish to his contractor money in advance of the stipulated payments. If he exhibits some solicitude or takes

some pains to see that such money is applied to the payment of wages or material, so as to speed the work and save the annoyance of possible litigation over liens or attachments, or if he visits the improvement to see that the specifications are carried out, can it be said that such acts furnish any evidence, or more than a scintilla, that the contractor is the agent of the owner and that the contract is in abeyance? We are unable to give our assent to this proposition and a careful examination of all the cases cited and many others leads us to the conclusion that there is neither principle nor authority impelling us so to do.

This conclusion in no wise militates against the well established doctrine that he who affirms the existence of an agency is not confined in his proof to direct evidence of a formal appointment but may show such a course of dealing between the parties as would naturally and reasonably lead to an inference of the existence of such agency. But where, as in this case, evidence, that is not disputed, shows that the relation between the parties was created by a written agreement; that the alleged agent was in truth and fact an independent contractor; where there is no evidence of any attempted fraud or deceit and the elements of estoppel are wanting, and where every act of the alleged principal is in harmony with and not contradictory of the relation created by the contract, to permit a jury to convert the independent contractor into an agent, would introduce into the ordinary business affairs of men, an element of danger the consequences of which might be far reaching and disastrous.

Even if the evidence had been sufficient to carry the case to the jury, we think the appellant might well complain of those portions of the charge which constitute the third and fifth assignments of error. But in the view we take of the case they need not be considered. Upon the whole record we are of the opinion the defendant's first point should have been affirmed and its motion for judgment n. o. v. should have prevailed.

Judgment reversed.