## Johnson & Towers, Inc., v. One Power Boat

*William Taylor* and *Willard M. Harris*, for libellant.

*D. Malcolm Hodge* and *Howard W. Yocum*, for respondent.

MacDade, J., January 29, 1935.—On September 17, 1933, there were filed in the prothonotary's office, under the Act of June 24, 1895, P. L. 251, sec. 1, amending the Act of June 13, 1836, P. L. 616, claims by this libellant, Johnson & Towers, Inc., against "one power boat, known as Patrol No. 1", of which

Thomas W. Rudderow, trading as Rudderow & Miller, was the owner, and also against Patrol No. 2.

The power boats were located at Essington, in our county, at the shipyard of the said Thomas W. Rudderow, and in the course of construction. The libel in each case alleges that the sum of $458.54 is due the plaintiff company by reason of a contract with the owner, by which it was to furnish and did supply materials, supplies, boat equipment, and ship chandlery, found and provided for in and for the building, fitting, furnishing, and equipping the said power boats at Essington, during the month of November 1933, as set forth in an itemized statement attached to each libel or claim.

Upon the filing of the libel in each case, and the opinion and order herein will be regarded as disposing of both cases, an attachment issued (known as vessel attachment) under the said Act of 1895, with clause of summons against the said Thomas W. Rudderow, trading as Rudderow & Miller, owner, requiring bail in the sum of $1,000 to release the said power boat or vessel from the lien of the attachment. The bond was furnished after levy and the vessels were discharged on April 24, 1934. The claims herein filed were attached to the praecipe for the said writs of vessel attachment.

These actions arise under the Act of June 13, 1836, P. L. 616, as amended by the Act of June 24, 1895, P. L. 251, creating a lien upon ships and vessels of all kinds built, repaired, or fitted, furnished, or supplied with necessaries for navigation within the Commonwealth, in favor of shipbuilders, merchants, dealers, tradesmen, and mechanics for work done or materials and supplies furnished in the building, repairing, fitting, furnishing, supplying, or equipping such vessels.

The act provides for institution of the action by libel, and the issuance thereupon of a writ of attachment, directed to the sheriff, commanding him to arrest and attach the vessel. The act provides further for discharge of the vessel from attachment upon entry of security. With respect to the subsequent proceedings, the act provides:

"Section 11. Upon the return of any such writ, such further proceedings may be had for the recovery of the debts aforesaid, as are usually had in courts of admiralty, and for the recovering of mariners' wages, and other debts actually contracted upon the high seas.

"Section 12. All questions of fact which shall arise under this act, shall be tried by a jury of the county, forthwith, upon the joining of an issue therein by the parties, unless they shall agree by writing filed, to refer the same to arbitrators, by rule of court.

"Section 13. The said court shall have power to pronounce the same interlocutory, and final sentence or decree upon such libel, and upon the petition of any other person concerned, and enforce the same, by the like writ, or other compulsory process, as a court of admiralty might in like cases."

There is no dispute, rather it is admitted, that the materials were furnished by the libellant, that they were used in the construction of the two boats, that they were reasonably necessary for the building and completion of the boats, and that the price of the materials furnished was $483.54 per vessel, of which $25 per vessel was paid.

On September 6, 1934, the defendant, Thomas W. Rudderow, filed an answer to the said libel, alleging that the libellant could not assert these claims or liens against the boats because of an alleged contract between the libellant and Maryland Casualty Company, the surety on the bond given to the City of Phila-

delphia to secure the performance of the contract to furnish and deliver the two power boats to the city's Bureau of Police of the Department of Public Safety. It was alleged that this contract provided libellant would file no libel or claim against the boats for the materials referred to or for the price thereof but would waive any lien therefor against the boats, and have recourse therefor to the contractor only. In support of this allegation, the defendant further recites that when Thomas W. Rudderow, the contractor, defaulted in his contract with the City of Philadelphia, Maryland Casualty Company, as his surety, was notified by the City of Philadelphia to complete the contract. The surety was entitled to elect either to pay to the City of Philadelphia such loss as it might suffer by reason of the contractor's default, to the maximum amount of its penal bond—$2,494.80 in the case of both vessels—or to complete the construction of the boats at its own cost and expense.

Upon inquiry, the surety learned of the unpaid bills of Johnson & Towers, Inc., for materials theretofore furnished to the vessels, amounting in the case of each vessel to $458.54. The surety learned also that two engines had been ordered by the contractor from Johnson & Towers, Inc., costing $1,648, which had not been paid for by the contractor and had not been delivered to the contractor, but were lying at the freight station at Essington, subject to freight and storage charges; and that further materials were required to complete the construction of the vessels which Johnson & Towers, Inc., was able to supply.

Negotiations, it is alleged on behalf of Maryland Casualty Company, were entered into between Maryland Casualty Company and Johnson & Towers, Inc., which resulted in an agreement by Johnson & Towers, Inc., to waive any lien against the boats in connection with the materials theretofore furnished and unpaid for, and to file no libel or claim against the boats on account thereof, in consideration of completion of the boats by Maryland Casualty Company, as surety, acceptance by Maryland Casualty Company of the engines then lying at the freight station, and payment of the full price therefor, together with freight and storage charges, and the purchase of further materials required to complete the construction of the boats which Johnson & Towers, Inc., was able to supply, from Johnson & Towers, Inc., and prompt payment therefor.

This agreement, it is alleged, was an inducement moving Maryland Casualty Company, as surety, to elect to complete construction of the boats at its own cost and expense, without which that company would not have elected to complete the boats but would have paid to the City of Philadelphia such loss as the city suffered by reason of the contractor's default, to the maximum amount, in the case of both boats, of $2,494.80.

In pursuance of this agreement, Maryland Casualty Company took delivery of the engines, after paying to Johnson & Towers, Inc., $1,711.98, the full price thereof, together with freight and storage charges, and also purchased from Johnson & Towers, Inc., further materials for use in the construction of the boats to the amount of $572.51, for which payment was made.

It is also alleged on behalf of Maryland Casualty Company that the actual cost of completion of each boat, paid by Maryland Casualty Company, exclusive of the lien claim now asserted by Johnson & Towers, Inc., greatly exceeded the sum of $2,494.80, the penal sum with respect to both vessels to which it was obligated under its bond to the City of Philadelphia, as surety.

Johnson & Towers, Inc., notwithstanding the alleged agreement that it would assert no lien against the vessels, attached both vessels under an alleged lien. Maryland Casualty Company, in order to effect delivery of the boats to the City of Philadelphia, was obliged to enter security for their release and did

enter security in each case for $1,000. Delivery of the boats was thereafter made to the City of Philadelphia.

Thus, under section 12 of the Act of 1836, supra, an issue was joined between the parties, the questions of fact arising from which are to be tried by a jury. The libellant then filed exceptions to the answer, claiming that the practice is in accordance with admiralty rules. We see no reason for the filing of exception, as it was conceded at bar that a jury must eventually pass upon the questions of fact arising by the joining of an issue by the parties.

These exceptions are as follows:

"1. Libellant excepts to inclusion in the respondent's answer of Maryland Casualty Company as a party, either legal or equitable, in this cause.

"2. Libellant excepts to so much of the answer of respondent as is set forth in paragraph 6 of said answer, being particularly the exclusive defense of Maryland Casualty Company, and asks that said paragraph 6 and accompanying unnumbered paragraphs be stricken from said answer, because Maryland Casualty Company is not a proper party respondent in this cause.

"3. Libellant excepts to the answer because the alleged promise of libellant to Maryland Casualty Company to forego its lien was without consideration."

Thomas W. Rudderow now asks leave of the court to file an amended answer to the libel, which is granted. Exceptions may be filed to this amended answer when it is formally filed of record. However, contemporaneously with the filing of said answer, Maryland Casualty Company asks leave of the court by petition to intervene in these suits and that the libellant and all other persons having or claiming to have any interest may be cited to appear and answer all and singular the matters set up in the said petition, and to show cause why the libel and complaint of the said Johnson & Towers, Inc., against the said power boats, known as Patrols 1 and 2, should not be dismissed, etc.

For our immediate consideration, therefore, are the disposition of the exceptions to the answer, whether leave shall be granted to file an amended answer, and should this court grant the prayer of Maryland Casualty Company, surety for defendant, to intervene in these proceedings in accordance with its prayers.

Before an answer thereto, it might be well to state that this libellant is clearly within its rights respecting the filing of this lien, as the Act of 1836, supra, 12 PS §3101, permits this for work and materials used in the construction or repair of vessels. In section 3 of this act, it is provided that the lien for work done and materials and supplies furnished as aforesaid shall exist in favor of all shipbuilders, merchants, dealers, tradesmen, and mechanics for all work done or materials and supplies furnished or provided in the building, repairing, fitting, furnishing, supplying, or equipping of such ships or vessels. See also Act of June 24, 1895, P. L. 251, sec. 3.

The builder of these power boats, namely the defendant, is prima facie the owner: Assigned Estate of The Reany Engineers and Ship Building Works, 9 Phila. 620; Low v. The Ship Clarence S. Bement, 2 Pa. C. C. 430, 19 W. N. C. 153.

The nature of the contracts to build these power boats was such that the defendant was within the provisions of the said acts. Although not strictly a maritime contract, yet the State may create such liens therefor as it sees fit: Baizley v. The Brig Odorilla, 121 Pa. 231.

The libellant having delivered the materials enumerated in the claims to and in the vessels, as well to the owner (defendant being contractor), the right to create these liens existed: Hays v. James Rees & Sons Co., 93 Fed. 984;

Hazelwood Dock Co. v. One House Boat, 67 Pa. Superior Ct. 207; Steamboat Dictator et al. v. Heath, 56 Pa. 290.

We are satisfied that the libellant has liens for materials, and that the contract under which they were furnished had reference to special vessels, namely, Patrol Boats No. 1 and No. 2, for the construction whereof they were to be used: The Young Sam, 2 Flipp. (U. S.) 439, Fed. Cas. no. 18,186.

Neither boat had proceeded on any voyage since these materials were furnished, and both boats at the time of the attachments were lying at Essington.

Now to the merits of the defense.

Inasmuch as the libellant, by exceptions to defendant's answer, raises the point that Maryland Casualty Company is not a party to these proceedings, the latter cannot set up a "waiver of lien" or an estoppel against libellant. The libels being filed to enforce liens against vessels then owned and in possession of the defendant, Rudderow, he is the only party who can raise such a defense, and he does not set up a "waiver of lien" for himself but for the benefit of Maryland Casualty Company, the surety.

No one questions the right of the libellant to file these liens, nor can anyone question its right to waive or relinquish the same. Has it waived the lien by its conduct or by entering into a contract with the surety company, as the latter alleges?

By analogy, the lien has been waived heretofore, as in The Vigilant, 151 Fed. 747, where it was held under the Act of June 24, 1895, P. L. 251, which gives a lien on vessels for supplies or materials furnished for their building or repair under contract with the builders, masters, owners, agents, or consignees thereof, that there is a presumption that supplies furnished to a domestic vessel, although on order of the owner, are so furnished on the credit of the vessel, and the lien exists unless it is affimatively shown to have been waived.

The taking of a note of the owner, for example, is not a relinquishment of the lien: Drew v. Hull, etc., Fed. Cas. no. 4,078, 17 L. I. 405; Sutton v. The Albatross, 2 Wall, Jr. 327, Fed. Cas. no. 13, 645. Indeed, the Act of April 20, 1858, P. L. 363, sec. 5, expressly provides that such liens are not invalidated by taking a note: Srodes v. The Collier, Fed. Cas. no. 13,272 (1861). And the recovery of a judgment against the contractor of a vessel does not preclude a materialman from filing a lien: The Brig Odorilla et al. v. Baizley, 128 Pa. 283.

These cases are cited to indicate that the trend of decisions is to have such matters as waiving and relinquishing liens decided by a jury, as the Act of 1836, supra, provides that all questions of fact such as this—and the identical question is raised in the answer and petition to intervene—shall be tried by a jury. This act also provides, upon return of the writ of attachment, that such further proceedings may be had for the recovery of these debts as are usually had in courts of admiralty: Shakespear v. The Schooner "Maggie Cain", 3 W. N. C. 167.

That case also hold that actions may be maintained upon bonds given for release of the liens or, as in admiralty, to continue the attachment suit, which latter remedy is being pursued here, and that the action against the sureties is at common law. The giving of bonds works an absolute discharge of the vessel from the lien which is analogous to the discharge of a mechanic's lien upon a building, and receives like construction: Cain et al. v. Shakespear, 3 W. N. C. 514; Rhinedollar v. Deklyne, decided by the District Court of Philadelphia County as of March term, 1827, no. 138, and cited in 4 Troubat and Haly's Practice (6th ed.) 3106 (1915).

The latter text, at page 3104, states that if the defendant has a defense to the claim, he may tender his issue or issues through the medium of an answer which, without pursuing any special form, must embrace a substantial statement of the grounds on which he resists the claim. No critical nicety is required in these pleadings; it is sufficient if they are clear and perspicuous and free from impertinent or irrelevant matter. The parties are at liberty to make as many points or questions of fact or of law as may be deemed necessary to determination of the cause upon its merits. Before specifying his defense, the respondent saves and reserves "all manner of benefit of exception to the libel, and the many untruths therein contained"; this reservation is analogous to the general issue plea in common law cases, and casts the burden of proving the truth of his libel upon the libellant. To this answer, if sufficient, the libellants put in their replication, joining in the issue tendered; and, the matters in dispute having been fairly reduced to precise points, the cause is set down for trial, like other cases, upon the issue list. The statute provides that all questions of fact that may arise shall be tried by a jury of the county forthwith, upon the joining of an issue thereon by the parties, unless they shall agree, by writing filed, to refer the same to arbitrators, by rule of court. This provision for a trial forthwith appears to entitle the cause to precedence upon the trial list and to abrogate the former practice of ordering a sale of the vessel as perishable property. See Vaughan v. Brig Flora, Dist. Ct., Phila. Co., June term, 1826, no. 334; Rhinedollar v. The Rose in Bloom, Dist. Ct., Phila. Co., March term, 1822, MS.

Inasmuch as all the proceedings are in accordance with the course of admiralty law, the trial is merely to satisfy the conscience of the court as to the justice of the claim, the proceeding being altogether in rem against specific property. The Act of June 13, 1836, P. L. 616, empowers the court "to pronounce the same interlocutory, and final sentence or decree upon such libel, and upon the petition of any other person concerned, and enforce the same (verdict), by the like writ, or other compulsory process, as a court of admiralty might in like cases": The Ship "Portland" et al. v. Lewis et al., 2 S. & R. 197.

Here is a petition to intervene by another person concerned, namely, Maryland Casualty Company, which desires to defend as a party defendant to support the allegations made by defendant in its behalf that the libellant has by contract for a sufficient consideration relinquished and waived the liens which it is now endeavoring to enforce by these proceedings. Why should petitioner not be permitted to intervene if the entire proceeding is to satisfy the conscience of the court and no common-law judgment can be entered? The determination of the issue is by decree of the court.

Maryland Casualty Company, as surety on the bonds given to the City of Philadelphia, upon default by the contractor, undertook the completion of the vessels. The company was subrogated, in respect to the vessels, to all the rights of the contractor. It acquired by subrogation all the rights of the contractor in the boats themselves. It required no assignment or stipulation to make its rights as subrogee effective. It undertook not only the completion of the boats but their delivery to the City of Philadelphia, free and clear of all liens. The undertaking was not that of a volunteer. It was an obligation imposed upon it as surety. It had a direct interest in the res, to effect delivery free and clear of liens, and in the causes of action, for the purpose of contesting the validity of the liens claimed against the vessels. Unless it be permitted to intervene to assert a real defense against the liens claimed, a defense which arose in the course of its construction of the vessels as surety on the contractor's bond, it may be deprived not only of equitable rights which are

obvious but of a legal right in the vessels themselves—the right to their possession free and clear of liens, which for good and valuable consideration were expressly waived under an agreement that no such liens would be claimed or asserted.

Maryland Casualty Company does not ask to intervene as the mere stipulator in the bonds for release of the vessels from attachment. It would have no right to intervene, under the admiralty practice, if its only relation to the cases was as stipulator on those bonds. But it furnished those bonds. It was obliged to furnish them to effect delivery of the vessels to the City of Philadelphia. It furnished them because as surety it had undertaken completion of the vessels and their delivery to the City of Philadelphia, free and clear of all liens. It furnished them in defense of its right, by subrogation, to possession of the vessels free and clear of the liens asserted.

The allowance of the liens would impose upon Maryland Casualty Company liability for their payment under its bond, which stands in lieu of the vessels, and that company has a direct interest not only in the res but in the causes of action, which it is entitled to protect by intervention.

The right of intervention, in both actions in rem and actions in personam, has always been recognized by the court in admiralty. Under our local practice, this petitioner would be permitted to intervene and assert its equities under the Act of June 4, 1901, P. L. 364, if it chose to do so. It chose to do so in the instant case and not to rely upon the defendant to assert it in its behalf. So this objection of libellant is positively removed by allowing Maryland Casualty Company to intervene and assert its own equities, without relying exclusively upon the averments of defendant's answer to be supported by evidence.

The right to intervene is usually a matter of discretion, subject to certain limitations, among which are where there is a proceeding or suit pending, as here, and that the party desiring to intervene, having knowledge of the proceeding, acted promptly in presenting the petition. There is no charge of laches in the instant case.

In 1 Benedict, Admirality (5th ed.) 413, sec. 346, that eminent and frequently quoted authority says:

"There are many other cases in which one may wish to appear on the libelant's side of the suit and upon the side of the defense the situations are numerous that call for appearances other than that of the designated respondent or the actual owner of the property libeled. This is especially true of suits *in rem* where the interests of many persons in the *res* may be seriously affected or even destroyed if the vessel is sold by the marshal such as the interest of a mortgagee, or of an insurer, or of anyone who may have a lien upon the ship.

"In such cases the party whose interests are affected may, by intervention, become a party to the suit already begun."

The procedure is set forth in Rule 34 of the Admiralty Rules of the Supreme Court:

"Rule 34. If any third person shall intervene in any cause of admiralty and maritime jurisdiction in rem for his own interest, and he is entitled, according to the course of admiralty proceedings, to be heard therein, he shall propound the matter in suitable allegations, to which, if admitted by the court, the other party or parties in the suit may be required, by order of the court, to make due answer; and such further proceedings shall be had and decree rendered by the court therein as to law and justice shall appertain. But every

such intervener shall be required, on filing his allegations, to give a stipulation with sufficient sureties or an approved corporate surety to abide by the final decree rendered in the cause, and to pay all such costs and expenses and damages as shall be awarded against him by the court on the final decree, whether it is rendered in the original or appellate court, not to exceed however in any event the agreed or appraised value of the property so claimed by him, it, or them, with interest at six per cent. per annum and costs."

The distinction between a "claimant" and an "intervenor" is carefully drawn in the case of The Two Marys, 12 Fed. 152:

"A 'claimant' in the admiralty practice, under rule 26, is a person who assumes the position of a defendant and demands the redelivery to himself of the vessel arrested. An 'intervenor', under rule 34, is one who, without demanding the redelivery of the vessel, seeks only the protection of his interest in her, or the payment of his claim in the ultimate disposition of the case."

An intervenor is thus defined in the more recent case of The Cartona, 297 Fed. 827, 828:

"An intervenor is one who appears pro interesse suo, but, if the action is in rem, he must have an interest in the res."

And the qualification of the right to intervene is thus expressed in The Flush, 274 Fed. 133:

"The right of a third party to intervene can be based only upon his having a claim against the res or the proceeds thereof. The petitioner was a stranger to the parties and to the cause of action when the libel was filed, and has never had any interest in, claims to, or connection with the res."

In view of the above, we make the following

*Decree*

And now, January 29, A. D. 1935, the above matters coming on to be heard by the court en banc upon libellant's exceptions to defendant's answer and petition to intervene by Maryland Casualty Company, together with briefs, after due consideration thereof the court doth order, adjudge, and decree that

1. Libellant's exceptions to defendant's answer be and are hereby dismissed.

2. Petition to intervene as defendant upon the part of Maryland Casualty Company be and is hereby allowed; provided that the said intervenor shall give a stipulation with sufficient sureties or approved corporate surety in the sum of $500 to abide by the final decree rendered in this cause and to pay all such costs and expenses and damages as shall be awarded against it on the final decree, whether it is rendered in the original or appellate court.

3. Libellants be and are hereby ordered and required to file an answer to the said petition for intervention and to file such other pleadings as law and procedure in such proceedings require in order that such issues may be formulated thereby whereby a jury trial may be had sec. reg. et sec. leg.

4. Respondent has leave to file an amended answer.

From William R. Toal, Media, Pa.