**BURNS BROS. v. THE CENTRAL R. R. OF NEW JERSEY, No. 42 et al.**

**No. 180, Docket 22585.**

United States Court of Appeals Second Circuit.

Argued March 3, 1953.

Decided March 27, 1953.

Vincent E. McGowan, John J. McElhinny, New York City, for Central R. Co. of New Jersey.

Sydney A. Schwartz, Alexander & Ash, Edward Ash, New York City, for Burns Bros.

Burlingham, Hupper & Kennedy, Stanley R. Wright, New York City, for respondent-appellee Wyer.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This suit is a sequel to that which we disposed of in Burns Bros. v. Long Island Railroad Co., 2 Cir., 176 F.2d 406, 950. The libellant, Burns Bros., there sued the Long Island Railroad for injury to a barge by a carfloat of the Central Railroad of New Jersey that had broken from her moorings while in possession of the Long Island Railroad, and had collided with the barge. The libellant joined the Central Railroad of New Jersey as a co-respondent; but, since the libel was *in personam* against both respondents, it was necessary to find each personally at fault, and, although we held the Long Island Railroad at fault, we dismissed the libel against the Central Railroad because there was no evidence that any servant of the road had been personally negligent. The Long Island Railroad had meanwhile gone into reorganization, so that Burns Bros. was doubtful whether a decree against it would be good, and for that reason it moved for a rehearing, seeking to hold the carfloat *in rem*. This petition we denied, saying, however: "Had this suit been brought *in rem*, it is apparent that the Central's carfloat could, and should, have been held secondarily liable." Acting upon this suggestion, Burns Bros. then filed this libel *in rem*, and arrested the carfloat,

as it could then do because the Central Railroad's reorganization under § 77—which had been going on during the first suit—had ended. At the trial the libellant by consent put in the record in the first suit, and argued that it had so established a lien of collision against the carfloat which it was entitled to foreclose. The Central Railroad as claimant asserted that the decree in the first suit was a bar to a suit *in rem;* and in addition that the libellant had been guilty of laches because it could, and should, have obtained leave from the bankruptcy court to arrest the carfloat in the first suit, and should then have proceeded *in rem* against her. Judge Byers thought that the decree in the first suit was not a bar, and, following our admonition, held the carfloat liable. The claimant appealed; and the libellant has also appealed, because the judge refused to allow interest upon the award after the date of petition filed in the reorganization of the Long Island Railroad. This second question we shall reserve for the moment.

It is obvious that the decree in the first suit determined no facts that stand in the path of the libellant's recovery here; on the contrary, it might be argued that it had found all the facts necessary to hold the carfloat liable *in rem*, for we exonerated the Central Railroad only because none of its servants had been personally at fault. So far therefore as the decree could be treated at all as an "estoppel"—as opposed to a "bar"—it would appear to favor the libellant. At any rate it is only as a "bar" that the Central Railroad now invokes it. Whether the "cause of action" is the same is not clear as a matter of first impression. It is true that the injury and the means by which it was accomplished are identical; on the other hand one of the constitutive facts in the first suit (personal negligence of the owner) is not a necessary fact in the suit at bar. Courts have vacillated in defining a "cause of action," some taking the view that it is the nexus of all those facts that must be proved to enable the plaintiff to recover; others, that it is only the interest—or "right"—for whose invasion the plaintiff seeks redress. The following statement is an example of the

second view, and we must accept it as authoritative for us, regardless of any opinion we might have personally. "Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong, and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence, or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right * *. *. A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show."[1] So defined, we can see no escape from considering the "cause of action" at bar as the same as that in the first suit. It is true that the first libel alleged that the Central Railroad, the owner, had been negligent, and that libel at bar alleges that the carfloat was negligent; but, although that was an absurd and meaningless allegation, it would make no difference whose negligence caused the damage. If a "cause of action does not consist of facts, but of the unlawful violation of a right which the facts show," there was in any event but one "cause of action" for only "a single primary right" was invaded.

█ It would still remain true that the first decree would not be a bar, if the carfloat were to be regarded as the defending party in the case at bar, for to be a bar the first decree must have been in a suit between the same parties. As is well known, it has from the beginning been true that in suits *in rem* the vessel has been regarded as the tort-feasor. "The idea that guilt attaches to the thing by which wrong has been done lingered on in our criminal law till the nineteenth century. Till 1846 the instrument which by its motion directly caused death was forfeit to the crown as a deodand."[2] "In Edward the First's time some of the cases remind us of the barbarian laws at their rudest stage. If a man fell from a tree, the tree was deodand. If he drowned in a well, the well was to be filled up. It did not matter that the forfeited instrument belonged to an innocent person. 'When a man killeth another with the sword of John at Stile, the sword shall be forfeit as deodand, and yet no default is in the owner.'"[3] It is of course true that such animistic notions have for most purposes long since disappeared; but it is hard to explain the present law as to liens for collision on any other theory than as a vestigial devolution[4] out of the notion that anything that moves and kills a man shall be deodand to the king.[5] It was only at a later stage that the law began to consider "fault" as a constituent of such a tort; and Story, J., could still say in 1827 of goods seized by the Treasury: "The thing is here primarily considered as the offender, or rather the offence is attached primarily to the thing; and this whether the offence be *malum prohibitum* or *malum in se*. The same principle applies to proceedings *in rem* on seizures in the admiralty."[6] This language he quoted in United States v. The Brig Malek Adhel, 2 How. 210, 234, 11 L.Ed. 239, as well as the following passage from an earlier opinion at Circuit of Marshall, C. J., in a libel of information against a ship for violating the embargo: "This is not a proceeding against the owner; it is a proceeding against the vessel for any offence committed by the vessel which is not less an offence * * * because it was committed without the authority and against the will of the owner."[7] The opinion in The China, 7 Wall. 53, 19 L.Ed. 67, cited at length those English decisions that had persistently continued to apply the doctrine after Parliament had pretty plainly

1 Baltimore S. S. Co. v. Phillips, 274 U. S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069; American Fire & Casualty Co. v. Finn, 341 U.S. 6, 13, 71 S.Ct. 534, 95 L.Ed. 702.

2. Holdsworth, Vol. II, 46, 47.

3. Holmes, The Common Law, pp. 24, 25; See also Pollock & Maitland, Vol. II, pp. 470–473.

4. Holmes, The Common Law, pp. 27–33.

5. Fitzherbert's Abridgement, "Corone," *placitum* 403.

6. The Palmyra, 12 Wheat. 1, 14, 6 L.Ed. 531.

7. United States v. The Little Charles, 26 Fed.Cas. page 979, No. 15,612.

abolished it: they show how deep had been the roots of the atavistic habit; and in 1901, Brown, J., said: "Whatever may be the English rule * * * the law in this country is entirely well settled that the ship itself is to be treated in some sense as a principal, and as personally liable for the negligence of anyone who is lawfully in possession of her, whether as owner or charterer."[8] Smith v. The Mormacdale, 3 Cir., 198 F.2d 849 and Samuels v. Munson S. S. Co., 5 Cir., 63 F.2d 861, on which the Central Railroad relies, are irrelevant; they decided no more than that in the Longshoremen's & Harbor Workers' Compensation Act.[9] Congress meant to make exclusive the liabilities that it imposed In reliance upon this doctrine Burns Bros argues that the former decree is not a bar here because the first suit was between different parties, i. e., itself and the Central Railroad; and indeed as much seems to have been held in The Odorilla v. Baizley, 128 Pa. 283, 294, 18 A. 511. This court has, however, twice decided that a decree *in rem* is a bar to a suit *in personam,* and we cannot see why the rule should not work both ways.[10] Moreover, we should have so held, had there been no precedents. The reason behind the doctrine of *res judicata* is that when a party to a controversy has had one fair chance to be heard, there is no reason to suppose that the result of a second trial will be more just than the first; and it is always true that interest *reipublicae ut finis litium.* Disputes arise between human beings, not inanimate things; and it would be absurd to give the beaten party another chance because on second trial he appears as the claimant to a vessel that is, and can be, nothing but the measure of his stake in the controversy. Therefore, even though we treat the "cause of action" in both suits as the "right," or as it is now more commonly called, the "interest" invaded, we should feel bound to hold that the first decree was a bar, were it not for another facet of the doctrine which we have not yet mentioned.

When the plaintiff has two alternative remedies available to him upon the same "cause of action," he may not reserve one and sue upon the other, and a judgment for the defendant upon one will be a bar to a later suit upon the other;[11] but obviously this rule ought not to apply when at the time of the first action only one of the two remedies was available to the plaintiff. Therefore, "where a judgment is rendered in favor of the defendant because the plaintiff seeks a form of remedy which is not available to him, the plaintiff is not precluded from subsequently maintaining an action in which he seeks an available remedy."[12] If we regard the "cause of action" at bar as the same as that in the first suit, as we must, the present libel *in rem* was an alternative remedy to the libel *in personam,* so that this appeal comes down to whether a libel *in rem* was "available" to Burns Bros. in the first suit, since, if it was, it could have been joined with the libel *in personam* under the 14th Admiralty Rule. It is perhaps interesting that this would have been equally the critical issue, were the test of identity between "causes of action" the identity of the two congeries of constitutive facts, and not the "interest" invaded; for, although the "cause of action" in the first suit would then have been different from that in the second, § 65(2) of the Restatement would apply.

There can be no question that while the carfloat was in the possession of the New Jersey District Court in the reorganization proceeding of the Central Railroad, Burns Bros. could not have arrested her; the most that it could have done was to apply to that court for leave to do so; and it is impossible to know what would have been the result. On whom should the burden rest of proving that the reorganization judge would have granted such an application? It seems to us that it should rest upon the Central Railroad. As things stood, the remedy *in rem* was not

---

8. The Barnstable, 181 U.S. 464, 467, 21 S.Ct. 684, 685, 45 L.Ed. 954.

9. §§ 901 et seq., Title 33, U.S.C.A.

10. Bailey v. Sundberg, 2 Cir., 49 F. 583;

Sullivan v. Nitrate Producers' S. S. Co., 2 Cir., 262 F. 371.

11. § 65(1) Restatement of Judgments.

12. § 65(2) Restatement of Judgments.

914

"available" to Burns Bros., and for that reason the decree in the first suit was not a bar. If Burns Bros. is to be charged as though the remedy was "available," that can be done only because it was guilty of laches in failing to make the remedy "available"; and laches is a defence and must be proved. The decree against the carfloat should be affirmed.

 The second question is that presented by the appeal of Burns Bros. which, as we have said, is because the running of interest upon its claim against the carfloat was stopped at the date of petition filed in the reorganization of the Long Island Railroad. The judge's theory as to this was that, since the carfloat was only "secondarily" liable, the claim against it could not be larger than that against the Long Island Railroad, which was "primarily" liable. If the carfloat had been a guarantor of the Long Island Railroad, that would of course have been true, for her liability would then have been no more than to pay whatever was the claim against the principal, the Long Island Railroad. But in the admiralty, as at common-law, every tort-feasor is liable in solido; and the rule allowing contribution between the two does not affect the liability of each to the party injured.[13] The same is true where, instead of contribution, one of the two tort-feasors may demand exoneration of the other, because the fault of the other is imputed to him without fault on his part. That is the situation at bar for the fault of the Long Island Railroad is imputed to the carfloat without fault on her part. The right of exoneration is as irrelevant to the liability of the carfloat to Burns Bros., as would be the carfloat's right of contribution, if she and the Long Island Railroad had each been guilty of fault. The occasion is comparable to an action against a principal, liable for the tort of an agent who has become insolvent. The principal may charge the agent for the whole amount because the agent is bound to exonerate him;[14] but no impairment of the principal's right of exoneration has any effect upon the right of the injured person to a full recovery upon the liability imputed to the principal. The liability of the carfloat was not affected by the partial default of the Long Island Railroad to Burns Bros., any more than it would be by its complete default. The Central Railroad has not argued that its reorganization in the New Jersey District Court resulted in a discharge of the lien of collision upon the carfloat, and for that reason we have not considered it.

Decree affirmed on the appeal of the Central Railroad of New Jersey.

Decree reversed on the appeal of Burns Bros. and interest allowed until entry of decree.

13. The Atlas, 93 U.S. 302, 23 L.Ed. 863. The Beaconsfield, 158 U.S. 303, 307, 15 S.Ct. 860, 39 L.Ed. 993.

14. § 401, Comment c, Restatement of Agency.