PENNSYLVANIA RAILROAD COM-
PANY, Libelant-Appellee,

v.

THE BEATRICE, her engines, etc., A. H. Bull Steamship Co., Inc., THE LESTER J. GILLEN, her engines, etc., and Henry Gillen's Sons Lighterage, Inc., Respondents-Appellants,

Dalzell Towing Co., Inc., Respondent-Impleaded-Appellee.

No. 140, Docket 25296.

United States Court of Appeals
Second Circuit.

Argued Jan. 12, 1960.

Decided Feb. 15, 1960.

A. V. Cherbonnier, New York City (Satterlee, Browne & Cherbonnier, and John H. Reilly, Jr., New York City, on the brief), for S. S. Beatrice and A. H. Bull Steamship Co., Inc.

John H. Hanrahan, Jr., New York City (Foley & Martin, New York City, on the brief), for Tug Lester J. Gillen and Henry Gillen's Sons Lighterage, Inc.

Henry C. Eidenbach, New York City (Hill, Rivkins, Middleton, Louis & Warburton, New York City, on the brief), for Dalzell Towing Co., Inc.

Burlingham, Hupper & Kennedy, New York City (Stanley R. Wright and H. Barton Williams, New York City, of counsel), for The Pennsylvania Railroad Company.

Before CLARK, HINCKS and WATERMAN, Circuit Judges.

HINCKS, Circuit Judge.

Shortly past noon on December 15, 1953, the Steamship Beatrice (owned by A. H. Bull Steamship Co., Inc.), assisted by the tug Dalzellaird (owned by Dalzell Towing Co., Inc.) and the tug Lester J. Gillen (owned by Henry Gillen's Sons Lighterage, Inc.), was shifted from its berth in Brooklyn to another berth, located in a nearby slip. To take charge of this movement, Bull employed Dalzell's docking pilot and licensed tug master, Captain Mattisen, under a contract which contained the pilotage clause set forth, so far as presently material, in the margin.[1] With Mattisen on board the Beatrice, as its docking pilot, and with the Beatrice moving partially under her own power, the flotilla entered the opening of the slip without mishap. The Gillen, however, shortly after casting off from the Beatrice's port bow, became wedged between the Beatrice and the libelant's barge which was moored to the pier on the north of the slip. And the barge, in consequence, sank in a little more than an hour.

The court below found that the accident was caused by numerous negligent acts of Captain Mattisen in addition to the independent negligent behavior of crew members of both the Gillen and the Beatrice. Judge Levet held the original respondents, the Beatrice and Bull, the Gillen and Gillen's Sons, and also the respondent Dalzell, which Gillen's Sons had impleaded, each jointly and severally liable for the libelant's damages and entered an interlocutory decree imposing a primary liability upon each of the three parties or interests for one-third of the loss, with a right in the libelant, upon its inability to enforce the liability thus imposed upon any particular respondent, to proceed against the other respondents.[2] Dalzell was granted indemnification on its cross-claim against Bull for any damages paid by it to libelant,[2] pursuant, allegedly, to the terms of the pilotage clause in its contract with Bull.[3] D.C.S.D.N.Y., 161 F.Supp. 136.

■■ The well reasoned opinion of Judge Levet, which thoroughly discusses and analyzes the evidence presented at trial, and our own independent study of the record and arguments here advanced, convinces us that there were strong reasons for holding each of the respondents

---

1. The pilotage clause provided, in part:

"When the captain of any tug furnished to or engaged in the service of assisting a vessel which is making use of her own propelling power, goes on board such vessel, it is understood and agreed that such tug boat captain or licensed pilot becomes the servant of the owner of the vessel assisted in respect to the giving of orders to any of the tugs furnished to or engaged in the assisting service and in respect to the handling of such vessel, and neither those furnishing the tugs and/or pilot nor the tugs, their owners, agents, charterer operators or managers shall be liable for any damage resulting therefrom."

We do not understand Bull to challenge the validity of the pilotage clause, as distinguished from the extent of its coverage in this case. See, e. g., Sun Oil Co. v. Dalzell Towing Co., Inc., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311; cf. Bisso v. Inland Waterways Corporation, 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911.

2. The decree contained the following orders:

"Ordered that any share which libellant shall not be able to collect from or enforce against any of said vessels or their respective owners or against any respondents shall be paid by the remaining claimants and respondents;

"Ordered, Adjudged and Decreed that Dalzell Towing Co., Inc., shall recover of and from A. H. Bull Steamship Co., Inc., as claimant of S.S. Beatrice and as respondent, any damages it is called upon to pay in accordance with the preceding paragraphs of this decree;"

3. See footnote 1, supra.

to some, if not all, of the negligent acts found against them. The master, who was in charge of the Gillen at the time of this accident, testified that the Gillen's engine and rudder speeds were inadequate to permit the rapidity of movement required for the operations undertaken and that this fact had been withheld from Captain Mattisen. Largely on the basis of allegedly conflicting pretrial statements Gillen's Sons challenges this testimony as perjury actuated by the malice of a discharged employee. However, we are presented with no impelling reason for disturbing the determination of credibility made below. Nor was it unreasonable to conclude that, absent Captain Mattisen's negligent handling of the flotilla, the Gillen would never have been in a position where its inadequate maneuverability would have caused damage. Even if we assume, as Bull contends, that Captain Mattisen was under no duty to make inquiry as to the sufficiency and maneuverability of the Gillen, still there is substantial evidence supporting the conclusions that he was at fault in entering the slip with the port side of the flotilla so perilously close to the libelant's barge; that this fault was partly the result of his failure to consult the available weather reports and to make proper allowance for the effect of the wind which tended to set the vessels to port; and that the speed at which the Beatrice entered the slip necessitated several "astern orders" which were given by Mattisen just prior to the collision and increased the movement to port. There was also reason to believe that Mattisen delayed too long in ordering the Gillen to clear the Beatrice, in view of the proximity of the libelant's barge to the flotilla.

Besides holding the Beatrice and Bull, in addition to Dalzell, liable to the libelant for the negligent acts of Captain Mattisen in the navigation of the Beatrice, the court below also concluded that the Bull interests were at fault for undue delay on the part of the Beatrice's crew in the execution of Captain Mattisen's order to cast off the Gillen's lines. It is true that the record on this point is in considerable conflict and, in any event, the delay in casting off was no greater than a few minutes. Nevertheless, there was evidence to support the finding that such delay did in fact occur and in the precarious situation then existing was a fault which contributed to the accident. We also think there was sound basis for the court's conclusion that the Beatrice's captain, who was on her bridge along with Mattisen, in order to personally see that his vessel was well maneuvered, was at fault for failure to correct or countermand Mattisen's order when the danger of the vessels' positions became imminent. Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina, S.A., 2 Cir., 32 F.2d 209; Griffin on Collision § 190. Cf. Union Shipping & Trading Co. v. United States, 2 Cir., 127 F.2d 771.

Accordingly, we hold that there is no sufficient reason to disturb the court's findings that the libelant's injuries were contributed to by the joint and several negligence of the Gillen, the Beatrice, and Dalzell as Mattisen's employer.

We turn now to a more difficult problem. On the basis of the findings as just affirmed all the parties save the Gillen interests contend that the damages should have been equally divided between the two vessels found to have been at fault, and that it was erroneous to fix a primary liability for a third part of the damages upon each of the two vessels and their respective owners and also upon Dalzell which was liable only *in personam*.

We hold that the primary liability for the damages as fixed below is in all respects in accord with reason and precedent.

There is no doubt that an innocent libelant in admiralty, as a plaintiff at common law, is entitled to hold each of the wrongdoers jointly and severally liable for his injuries. In consequence, any of the respondents here who were sued *in personam*, or either of the vessels *in rem*, at least to the extent of

its value, could have been held liable *in solido* for the entire damages if it had been sued separately. The fact that all of the offending interests were before the court in a single suit does not limit the libelant's right against each. The Atlas, 93 U.S. 302, 23 L.Ed. 863; The Alabama, 92 U.S. 695, 23 L.Ed. 763; The Cockatoo, 2 Cir., 61 F.2d 889; Burns Bros. v. Central R. R. of New Jersey, 2 Cir., 202 F.2d 910. But in determining the incidence of the loss as between the wrongdoers, the court will apportion it equally among all, in a decree which provides that so much of the loss as is unenforceable from the one against whom it was assessed may be collected from the others. Thus the maritime notion that justice requires that wrongdoers shall bear the loss in equal parts is given effect in so far as possible, with provision for the protection of the innocent libelant. That is precisely what Judge Levet ordered below. That here two of the wrongdoers are vessels while the third is an individual is a fortuitous circumstance which affects neither the libelant's right nor the respondents' liabilities. The Coamo, 2 Cir., 267 F. 686; The Edward G. Murray, 2 Cir., 278 F. 895; Pennsylvania R. Co. v. Naam Looze Vennoot Schap, 4 Cir., 261 F. 269; Great Lakes Towing Co. v. Masaba S.S. Co., 6 Cir., 237 F. 577; The Kookaburra, 2 Cir., 69 F.2d 71; Smith v. Nicholson Transit Co., D.C.W.D.N.Y., 39 F.Supp. 795. See also cases cited above.

In collision cases there has always been a right of contribution amongst joint tort feasors. Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318; The Chattahoochee, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801; The Cockatoo, supra; The Kookaburra, supra. And as many of the cases above cited show, the traditional division of damages rule in collision cases has been extended to situations where third parties suffer damage. But the rule was never one which exonerated non-vessel parties contributing to collisions, or which prevented innocent libelants from proceeding directly against individual wrongdoers *in personam* severally or jointly with any vessels at fault and/or their owners. Great Lakes Towing Co. v. Masaba S.S. Co., supra; The Coamo, supra; The Kookaburra, supra. Cf. Burns Bros. v. Central R. R. of New Jersey, supra. In this case, Dalzell, but not its tug, was at fault. Neither reason nor authority requires that it should be exonerated from a proportionate part of the primary liability.

We need not now decide how the division of damages rule should have been applied if Bull's liability had been based solely on the pilot's negligence in navigating the Beatrice thus creating a situation in which a single act of negligence gave rise to liability on the part of two separate interests, viz., Bull and its vessel, on the one hand, and Dalzell, on the other hand. We hold here only that the rule of The Eugene F. Moran, 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600, which requires that an admiralty lien be divided equally between the vessels at fault rather than apportioned between their respective owners, neither limits the rights of an innocent party vis-a-vis any or all tort feasors, nor relieves a tort feasor comprising a separate interest, such as vessel and its owner, from responding for a share of the damages proportionately equal to the shares of other separate interests.

One further point remains for consideration. Was the court below right in ruling that under the pilotage clause Dalzell was entitled to be indemnified by the Beatrice interests? As to that, when the captain of a tug goes aboard a vessel at its request to serve as docking pilot, he generally remains an agent of the tugboat owner vis-a-vis an innocent party injured in the docking movement. Griffin on Collision § 197. The fact situation here was such that Mattisen when aboard the Beatrice clearly continued as the agent of Dalzell within the purview of that rule. Publicker Industries v. Tugboat Neptune Co., 3 Cir., 171 F.2d 48; Robins Dry Dock & Repair Co. v. Navigazione Libera

Triestina, S.A., 261 N.Y. 455, 185 N.E. 698, certiorari denied Moran Towing & Transportation Co. v. Robins Dry Dock & Repair Co., 290 U.S. 656, 657, 54 S.Ct. 72, 78 L.Ed. 568, 569. It was plainly right, therefore, to hold that Dalzell was under a primary liability to the libelant for a one-third part of the damages. But the effect of the pilotage clause was such as to provide Dalzell with a right to indemnification from Bull for liability resulting from Mattisen's negligence in the navigation of the Beatrice and the giving of orders to the Gillen. Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311; Moran Towing & Transportation Co. v. Navigazione Libera Triestina, S.A., 2 Cir., 92 F.2d 37, certiorari denied 302 U.S. 744, 58 S.Ct. 145, 82 L.Ed. 575. In the case here, Dalzell's liability was posited solely upon such negligence.

Affirmed.