Edward D. PRATT, Jr., Petitioner,
Appellant,

v.

UNITED STATES of America et al.,
Appellees.

No. 6314.

United States Court of Appeals
First Circuit.

Dec. 28, 1964.

---

John J. Flaherty, Portland, Me., with whom Berman, Berman, Wernick & Flaherty, Portland, Me., and Katz & Kaplan, Boston, Mass., were on brief, for appellant.

Sidney W. Thaxter, Portland, Me., with whom James R. Flaker and Linnell, Perkins, Thompson, Hinckley & Thaxter, Portland, Me., were on brief, for Ernest J. Flood, appellee.

Morton Hollander, Atty., Dept. of Justice, with whom John W. Douglas, Asst. Atty. Gen., Alton A. Lessard, U. S. Atty., and Pauline B. Heller, Atty., Dept. of Justice, were on brief, for United States of America, appellee.

Before WOODBURY, Chief Judge, and HARTIGAN * and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is an appeal from the granting of a summary judgment resulting in dismissal. Pratt, the appellant, received personal injuries on December 19, 1958 while a seaman aboard the F/V Sylvester F. Whalen, hereafter vessel, owned by Sylvester F. Whalen, Inc., hereafter owner. He sued the owner in personam in the state court in March 1959 in separate counts, under the Jones Act, 46 U.S.C. § 688, and because of unseaworthiness of the vessel, and for maintenance and cure. In December 1960 he executed a general release of all claims for $3,000. The insurance policy written by the insurer defending the suit contained a $250 deductible clause, and the owner refusing to advance this sum towards the settlement, the release was voided. Instead, the insurer paid Pratt $2750 and took a covenant "to forbear to institute or press legal proceedings or in any other way make any other demand or claim against the said [insurer] * * * provided, however * * * that any and all rights and claims against the owners * * * are expressly reserved to me." Pratt continued with his suit against the owner, and in October 1962 recovered a single judgment in the amount of $8694 plus costs. This judgment is unsatisfied.

■ In February 1963 the United States, a holder of a preferred mortgage on the vessel, brought a libel in rem in the district court to foreclose. Flood, assignee of various lienors, intervened, and so did Pratt. Pratt sought recovery de novo under the Jones Act ($25,000), for injury due to unseaworthiness ($25,000) and for maintenance and cure ($5,000). Alternatively he sought satisfaction of his judgment. The court ruled against him on all counts. Since he seeks to intervene as of right an appeal lies. International Mortgage & Investment Corp. v. Von Clemm, 2 Cir., 1962, 301 F.2d 857.

With respect to the Jones Act the opinion of the district court pointed out that the three-year statute had run, and that, in any event, no maritime lien ever attached on account of that cause of action so as to permit a proceeding in rem. 46 U.S.C. § 688, 45 U.S.C. § 56; Plamals v. S.S. "Pinar Del Rio," 1928, 277 U.S. 151, 48 S.Ct. 457, 72 L.Ed. 827. Pratt does not contest this. Unfortunately, at least superficially it compounds his troubles. Appellees, viz., the United States and Flood, not unnaturally assert that all of Pratt's claims merged in the judgment, that the judgment, the more particularly because it includes a claim on which he concededly cannot recover, can support no lien, but that it destroyed the liens which previously existed. Pratt contends that he may still enforce his original liens in full or, alternatively, to the extent that the judgment represents a permitted recovery. The resolution of these issues is complicated by the fact that on the face of the judgment it cannot be told whether Pratt prevailed on one count, or two counts or three counts.[1]

---

* Judge Hartigan heard the argument, but because of illness did not participate in the opinion or judgment.

1. Strictly Pratt could not have recovered, as distinguished from prevailed, on three counts, because the Jones Act count and the unseaworthiness count were, of course, in substance for the same cause of action, Baltimore S.S. Co. v. Phillips, 1927, 274 U.S. 316, 47 S.Ct. 600, 71 L. Ed. 1069. Hence the judgment would be the same on its face whether the court had found for Pratt on the merits on the Jones Act count and against him on the unseaworthiness count, or vice versa, or in his favor on both. With respect to maintenance and cure Pratt presently alleges no dates, and since such recovery is not normally prospective, Calmar S.S. Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Farrell v. United States, 1949, 336 U.S. 511, 515–516, 69 S.Ct. 707, 93 L.Ed. 850, the original suit may not have encompassed what he is presently seeking. See Farrell v. United States, supra, at 519, 69 S.Ct. 707.

Whether a judgment may create a new lien,[2] or, to some extent, is entitled to the benefit of the lien applicable to the original cause of action,[3] does not arise because appellees, the only parties presently interested in the vessel,[4] are not in privity with the owner to the extent that the judgment may be pleaded against them. Baun v. The Ethel G., D.C.D.Alaska, 1954, 125 F.Supp. 835, 15 Alaska 283; The Boston, C.C.W.D.Pa., 1881, 8 F. 628. In other words, so far as the present parties are concerned, Pratt's alternate claim on the judgment itself cannot be sustained. The question must be whether he is precluded as a result of these prior proceedings from going against the vessel on his counts for unseaworthiness and for maintenance and cure.

█ The court, without going behind the face of the judgment,[5] held that because of the election provision in the Jones Act[6] Pratt had made an election with respect to the unseaworthiness claim when he commenced his civil action in the state court and prosecuted it to final judgment. We believe this a misconception. If Pratt had initially brought only an unseaworthiness claim he could have done so simultaneously in two suits, one on the civil side,[7] and one in rem. McAfoos v. Canadian Pacific Steamships, Ltd., 2 Cir., 1957, 243 F.2d 270. See also Continental Grain Co. v. The Barge FBL–585, 1962, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540. The Jones Act election provision has given rise to a number of rulings, not all reconcilable,[8] but no court, prior to the court below, has held that it caused an unsatisfied in personam judgment in favor of a seaman to become a binding election. We do not believe Congress had this restrictive intent. The statute's primary purpose was

2. We find no case suggesting that it does. Such a holding would seem inconsistent with the principles upon which maritime liens depend. See Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., 1940, 310 U.S. 268, 280, 60 S.Ct. 937, 84 L.Ed. 1197; Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 1920, 254 U.S. 1, 9, 41 S.Ct. 1, 65 L.Ed. 97; Todd Shipyards Corp. v. City of Athens, D.C.D.Md., 1949, 83 F.Supp. 67, 76, aff'd sub nom., Acker v. City of Athens, 4 Cir., 1949, 177 F.2d 961.

3. See Restatement, Judgments, § 47, comment *d;* Steinhardt v. Russian Orthodox, Catholic Mut. Aid Soc., 1951, 366 Pa. 222, 77 A.2d 393; Ulrich v. Lincoln Realty Co., 1946, 180 Or. 380, 168 P.2d 582, 175 P.2d 149; cf. Standard Oil Co. v. Y-D Supplies Co., 1934, 288 Mass. 453, 193 N.E. 66. But cf. Stapp v. The Swallow, D.C.S.D.Ohio, 1858, 22 Fed.Cas. p. 1082 (No. 13,305). If a judgment is so entitled it would raise subsidiary questions which, also, we need not consider.

4. The vessel has been sold for considerably less than appellees' liens, and the fund is now the sole res.

5. On the record there was an indication of a factual issue as to what was covered by the judgment. This would prevent a summary dismissal if such issue were presently relevant.

6. "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law [in the district court], with the right of trial by jury, * * *." 46 U.S.C. § 688.

7. In view of Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368, he could not have brought that separate action on the civil side of the federal court in the absence of diversity. In other words, the Jones Act election provision would not have been applicable at all.

8. In McCarthy v. American Eastern Corp., 3 Cir., 1949, 175 F.2d 724, 726, in holding that a seaman could go to the jury on a Jones Act count and a count for unseaworthiness the court referred to the Jones Act "election" as one between a jury trial and a suit in admiralty. This caused the Second Circuit to enlarge its prior narrower view. Balado v. Lykes Bros. S.S. Co., 2 Cir., 1950, 179 F.2d 943. These decisions have led some courts to hold that an election between the civil and the admiralty remedy occurred by the filing of the first suit. Murphy v. American Barge Line Co., D.C.W.D.Pa., 1950, 93 F.Supp. 653; Jonassen v. Norwegian American Line, Inc., D.C.S.D.N.Y., 1952, 105 F.Supp. 510. Jonassen must be taken to be overruled by McAfoos v. Canadian Pacific Steamships, supra, and, we believe, properly so. See also Stalker v. Southeastern Oil Delaware, Inc., D.C.D.Del., 1952, 103 F. Supp. 436.

to give seamen a remedy on the civil side of the court, i. e., with jury, without requiring diversity of citizenship. McCarthy v. American Eastern Corp., fn. 8, supra. We regard the phrase "at his election" solely in this sense of optional additional relief and not as imposing special limitations upon the choice.[9] Rather, the question should be what are the normal consequences of selecting one remedy instead of another.

Although it has been held that a judgment in personam does not prevent a subsequent action against the owner's interest in the vessel in rem, generally, The Henry S., D.C.E.D.Va., 1933, 4 F.Supp. 953, or at least under special circumstances, Burns Bros. v. The Central R.R. of New Jersey, No. 42, 2 Cir., 1953, 202 F.2d 910, that is not this case. Whatever strength there may be in the fiction that the vessel is a separate entity, but cf. Ruiz Pichirilo v. Maysonet Guzman, 1 Cir., 1961, 290 F.2d 812, rev'd on other gr'ds, 369 U.S. 698, 82 S.Ct. 1095, 8 L. Ed.2d 205, in the case at bar Pratt is truly pursuing different interests. If we were to follow the analogy of joint obligors, a judgment in a joint action in personam precludes a further action against one individually. But an "election" to sue one of them individually generally does not preclude, even when it ripens into judgment, a separate action against the others. Lovejoy v. Murray, 1865, 3 Wall. 1, 70 U.S. 1, 18 L.Ed. 129; Reynolds v. New York Trust Co., 1 Cir., 1911, 188 F. 611, 616, 39 L.R.A., N.S., 391; Cameron v. Kanrich, 1909, 201 Mass. 451, 87 N.E. 605; Restatement, Judgments, § 94.

 A lienor is not, of course, a joint owner, and hence a true joint obligor. Nonetheless his interest is on the block so far as liability incurred by the vessel is concerned, although because of the original obligation to him he has in effect a right over against the owner. In other words, a maritime lienor is an obligor to the extent of his interests to a subsequent [10] lienor, but an indemnitee with respect to the owner. Following the rules which generally apply in situations involving joint obligors between whom there is a duty of indemnification we are led to the following conclusions: (1) that by going against the owner alone Pratt was not barred from proceeding against the interests of other joint obligors, such as appellees, even by the rendition of judgment in the first action; (2) that if the judgment had been in favor of Pratt there was insufficient privity between the owner and appellees to enable the judgment to be used against the latter, cases supra; (3) but that if the judgment had been in favor of the owner, mutuality does not apply and appellees could have taken advantage of it. This last is so whether the owner is regarded simply as an indemnitor, see Restatement, Judgments, § 96(1) (a), or as an agent for the lienors. Id., § 99; see Adriaanse v. United States, 2 Cir., 1950, 184 F.2d 968, cert. den. 340 U.S. 932, 71 S.Ct. 495, 95 L.Ed. 673; Bruszewski v. United States, 3 Cir., 1950, 181 F.2d 419, cert. den. 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632; Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 862–863 (1952). Furthermore, a decision that a plaintiff may recover a certain amount is a decision that he cannot recover more. We therefore reach the additional conclusion (4) that appellees may use the judgment as a maximum limitation on Pratt's present recovery for the causes of action covered by the judgment. Restatement, Judgments, § 96(1), (b); The Propeller East, D.C.N.D.N.Y., 1877, 8 Fed.Cas. p. 265 (No. 4,251), 9 Ben. (U.S.) 76. If a question arises as to the interpretation of the judgment the burden should be upon appellees, who are in the position of relying on it.

---

9. In fact Congress was peculiarly solicitous with regard to seamen's rights under the Jones Act, providing as a special feature that, as in FELA cases, a suit brought in the state court could not be removed by the defendant. Pate v. Standard Dredging Corp., 5 Cir., 1952, 193 F.2d 498.

10. That questions of priority are not always simple, see The National Shawmut Bank v. The Winthrop, D.C.D.Mass., 1955, 134 F.Supp. 370.

The foregoing sufficiently sustains, also, Pratt's position with respect to maintenance and cure, and we need not reach certain special contentions with respect to that count.[11]

■ We turn, finally, to the effect of the covenant not to sue or to make a claim against the insurer, the only question in the case governed by state law, and one not reached by the district court. Since we find it hard to conceive how Pratt ever had any right to sue the insurer as such,[12] but must assume that the agreement for which the insurer paid had an intended business purpose, McMahon v. Monarch Life Ins. Co., 1962, 345 Mass. 261, 264, 186 N.E.2d 827; Restatement, Contracts, § 236(a), we naturally conclude that it was designed to protect the insurer's interests in some manner. Clearly it did not, and could not, as a matter of contract protect the insurer from liability to the owner, against whom Pratt's rights were expressly reserved.[13] The insurer's other interests were presumably in the vessel itself, or more exactly in the rights of the mortgagee, and possibly other lienors. The covenant did not in terms reserve Pratt's rights to proceed against the vessel. It may be wondered what value it would be to the insurer if this reservation were to be unreservedly implied. If the insurance protects the separate interests of lienors, and Pratt is free to foreclose, such a proceeding will result in a claim over against the insurer in spite of the covenant.

■ The question whether the covenant should be construed to permit the present action seems to us one of fact. We do not think it resolved by the circumstance that the superceded release had expressly discharged the vessel and the covenant did not. Since by the latter Pratt expressly reserved his rights against the owner it would be natural for this reservation to include, by implication, his rights against the owner's interest in the ship. To have reiterated the full discharge of the vessel would have been unduly restrictive. Consequently we suggest that it may be inappropriate to retrospect the release. Rather, the emphasis should be on whether the express reservation in the covenant to sue the owner included the right to make claim against the interests of others.

■ Appellees' defense of laches we will not consider in advance of the district court. Czaplicki v. The Hoegh Silvercloud, 1956, 351 U.S. 525, 534, 76 S.Ct. 946, 100 L.Ed. 1387.

Judgment will be entered vacating the judgment of the district court insofar as it granted summary judgment against appellant on his second and third causes of action and dismissed said counts, but otherwise affirming the judgment of the district court. Further proceedings to be in accordance with this opinion. Appellant to recover his costs in this court.

---

11. We disagree with appellee's view that maintenance and cure will not support a preferred lien. 46 U.S.C. § 953(a). This right is, in effect, a part of the seaman's wages. Pacific S.S. Co. v. Peterson, 1928, 278 U.S. 130, 137, 49 S.Ct. 75, 73 L.Ed. 220; Turner v. Wilson Line of Mass., Inc., 1 Cir., 1957, 242 F.2d 414, 417; Sperbeck v. A. L. Burbank & Co., 2 Cir., 1951, 190 F.2d 449, 452.

12. The policy was not introduced, nor its terms described, but direct action is normally only by statute. See Note, Direct Action Statutes: Their Operation and Conflict-of-Law Problems, 74 Harv.L. Rev. 357 (1960).

13. We can only assume, and, indeed, do readily assume, that the insurer felt that by his failure to contribute to the advantageous settlement the owner lost his rights against it. Even if the policy contained no express provision the insured should have a duty, which it failed to perform, corresponding to the insurer's obligation to pay its share of a reasonable offer of settlement. Murach v. Massachusetts Bonding & Ins. Co., 1959, 339 Mass. 184, 158 N.E.2d 338. See generally, Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv. L.Rev. 1136 (1954).