USL CAPITAL, as agent for Ford Motor Credit Company successor by, merger to Ford Equipment Leasing Company, Plaintiff,

and

Simpson Towing & Salvage Company, Inc., Plaintiff–in–Intervention,

v.

The NEW YORK 30, her equipment, furniture etc., Defendant in rem.

No. CV–95–10638–MEL.

United States District Court, D. Massachusetts.

Nov. 15, 1996.

Wilson, Elser, Moskowitz, Edelman & Dicker, (David L. Tillem, Michael L. Saltzman, Of Counsel), White Plains, NY, for Plaintiff.

Flanagan & Hunter, (Brian P. Flanagan, Of Counsel), Boston, MA, for Plaintiff–in–Intervention.

LASKER, District Judge.

On June 12, 1995, the vessel New York 30 was sold pursuant to an order of this court. The sale was the result of an action to foreclose a preferred ship's mortgage held by the Plaintiff, USL Capital, against the Defendant vessel, the New York 30, and to recover the amount due under the Mortgages against the Vessel owner, New England Marine Services (NEMS) and other defendants in personam. USL filed the foreclosure action in April, 1995. In May 1995, Simpson Towing & Salvage Company, Inc., moved to intervene asserting it had a preferred maritime lien against the defendant vessel for towage services it provided during 1987 and 1988.

Both USL and Simpson claim superior rights to the proceeds of the June 1995 judicial sale. USL now moves, pursuant to Fed. R.Civ.P. 56, for summary judgment dismissing the Complaint–in–Intervention of Simpson, arguing that Simpson is barred by res judicata from asserting an in rem claim against the New York 30 because it previously obtained a judgment in personam against the Vessel's owner.

For the reasons discussed below, USL's motion is denied.

### I.

This is not the first time many of the parties in this action have been at odds in litigation. Indeed, the roots of this action date back nearly ten years. Because

Simpson does not challenge the general history of the dispute as set forth by USL, this recitation draws largely from USL's statement of facts:

In 1986, Simpson entered a contract for towage services with NEMS; the agreement was amended in 1987. Under the agreement, Simpson was to perform towing services for various NEMS barges. NEMS purchased Defendant vessel, the New York 30, in January 1988.

On June 3, 1988, NEMS sued Simpson in the United States District Court for the District of New Jersey alleging that Simpson had damaged another of NEMS's barges. Additional litigation was filed in the District Court of Massachusetts regarding the same transactions. Both actions were consolidated in the District of Massachusetts. In that suit, Simpson filed a counterclaim alleging that towing charges in excess of $160,000 were owed by NEMS to Simpson for past towing services performed from June 1987 through June 1988 regarding various barges, including the New York 30.

This first litigation did not conclude until April 30, 1992. After trial, judgment was entered in favor of NEMS on several claims but Simpson was awarded the sum of $122,-360.15 for its towing charges. On September 30, 1992, NEMS paid Simpson $25,000 against the amount due Simpson under the judgment.

While the first litigation between NEMS and Simpson was pending, USL made and then refinanced a mortgage loan on the Vessel New York 30 to NEMS: the first mortgage was executed on June 9, 1988 and recorded on June 15, 1988; USL refinanced the mortgage on January 21, 1992, which was recorded on March 5, 1992.

NEMS filed a voluntary bankruptcy petition on November 20, 1992. Both USL and Simpson filed proofs of claim in the bankruptcy court. The bankruptcy petition of NEMS was dismissed on February 27, 1995. (Although the facts of record concerning NEMS' bankruptcy proceeding are sparse, USL apparently obtained entry of a stipulation vacating the automatic stay, resulting in "adequate protection" payments being made by NEMS to USL under the mortgages to USL.)

As stated above, this action was filed by USL on April 16, 1995. In May 1995, Simpson moved to intervene as a party plaintiff against the Defendant Vessel New York 30.

## II.

USL concedes that under admiralty law, but for the prior litigation between NEMS and Simpson, Simpson's lien for towage services, deemed "necessaries" under maritime law, would be superior to that of USL. See 46 U.S.C. § 31326 ("when vessel is sold by order of a district court ... the preferred mortgage lien ... has priority over all claims ... except preferred maritime liens," which include maritime liens, such as Simpson's, that arose before a preferred mortgage is filed). USL argues, however, that notwithstanding the priority status of Simpson's lien, Simpson's in rem claim against the New York 30 is barred by res judicata because Simpson previously obtained an in personam judgment against NEMS for the value of the towing services.

A holder of a maritime lien may bring suit on the lien in rem or in personam. See Gilmore & Black, The Law of Admiralty, § 9–17 at 613 (2d ed.1975). An action in rem is brought against the vessel and an action in personam against the vessel owners. The fiction of the ship's separate personality arguably suggests that an action in personam would not bar a subsequent in rem action against the ship. See id. Unfortunately, there is a paucity of authority from which to verify or reject this proposition.

However, in a case remarkably similar to the one at hand, the First Circuit, Pratt v. United States, 340 F.2d 174 (1st Cir.1964), did discuss the res judicata effect of a prior judgment in personam on a subsequent in rem suit. In Pratt, an injured seaman, whose prior in personam judgment remained unsatisfied, sought to intervene in an in rem action brought by the United States, a holder of a preferred mortgage, to foreclose on a vessel. The Court of Appeals held that Pratt was not barred from bringing an in rem

claim because he was "truly pursuing different interests." *Id.* at 178. Although the Court acknowledged the historic distinction between a ship and a ship owner, its holding, nevertheless, did not rely on the lack of identicality between them in finding that res judicata did not apply to Pratt's in rem claim.[1] Rather, in concluding that Pratt was pursuing a "different interest," the First Circuit analogized the suit to one involving joint obligors in which "a maritime lienor is an obligor to the extent of his interests to [another] obligor, but an indemnitee with respect to the owner." *Id.* at 178. Thus, *Pratt* was free to assert his in rem claim.[2]

The First Circuit found it unnecessary to determine the issue of whether res judicata barred Pratt's in rem action as a matter of law. The holding did, however, contain one caveat regarding Pratt's ability to recover in the second action: his in personam judgment acted as a maximum limitation on any recovery on his in rem claim.

USL asserts that *Pratt* is inapposite because it involved the statutory rights of an injured seaman, and relies instead on Judge Learned Hand's decision in *Burns Brothers v. Central R.R. of N.J.,* 202 F.2d 910 (2d Cir.1953), to establish that Simpson's in rem action is barred by res judicata. In *Burns Bros.,* a carfloat owned by the Central Railroad had, while in the control of the Long Island Railroad, damaged Burns Brothers' barge. In the first suit by Burns Brothers, the Long Island Railroad was found at fault, but the suit against Central was dismissed because there was no evidence that any employee of Central had been negligent.

Burns Brothers then brought suit *in rem* against the carfloat owned by Central. In determining whether Burns Brothers' cause

of action in the second suit was barred by the first, Judge Hand found

> [w]hether the 'cause of action' is the same is not clear as a matter of first impression. . . . Upon principle, it is perfectly plain that the respondent suffered but one actionable wrong, and was entitled to but one recovery, whether his injury was due to negligence, or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right.

*Id.* at 911–12.

Judge Hand next rejected the theory of the separateness of the ship's personality as a rationale for allowing successive in rem and in personam actions. However, despite this rejection, he concluded that Burns Brothers was not barred from bringing its in rem action because "at the time of the first action only one of the two remedies was available" to it while Central was in reorganization proceedings. *Id.* at 913.

Although USL seeks to reconcile *Pratt* with *Burns Bros.* by arguing that the Court permitted Pratt to pursue his in rem claim only because it was not "available" to him in his Blank Page earlier action, the Court's analysis in *Pratt* does not even consider whether an in rem remedy was available to Pratt in his first suit. Moreover, contrary to USL's assertion, *Pratt* cannot be distinguished as a case dealing with the special rights of an injured seaman because the Court's decision did not rely on that fact either.

Applying the principles of these cases, I conclude that under the authority of *Pratt,* Simpson's in rem claim is not barred by res judicata for two reasons. First, the facts of the case at hand are almost a mirror-image of those that are found in *Pratt:* Simpson,

---

1. A finding of "sufficient identicality between the parties in the two suits" is one part of the three part test the First Circuit has articulated to determine whether res judicata precludes litigation of a party's claims. *Apparel Art Int'l v. Amertex Enterprises, Ltd.,* 48 F.3d 576, 583 (1st Cir.1995). The other two factors are a final judgment on the merits in an earlier suit and sufficient identicality between the causes of actions asserted in the earlier and later suits. *Id.*

2. In *Pratt,* the Court stated that "a maritime lienor is an obligor to the extent of his interests to a *subsequent* lienor, but an indemnitee with respect to the owner." 340 F.2d at 178 (emphasis added). While the Court qualifies the word "subsequent" by noting after its use that "questions of priority are not always simple," the effect of the analogy is clear: it allowed the Court to avoid the application of the doctrine of res judicata and enabled Pratt to assert his in rem claim against the proceeds of the sale of a vessel.

like Pratt, seeks to intervene as of right to assert an in rem claim for the proceeds of the sale of a vessel against the holder of a preferred mortgage, and as in *Pratt,* the owner of the vessel is no longer party to the suit. Although it is true that the *Pratt* decision sidesteps the issue of whether the admiralty distinction between a vessel and a vessel owner is sufficient to avoid the application of res judicata, the Court does acknowledge that that distinction exists in admiralty law and, in fact, makes no suggestions that it considers the distinction bad law. *See Pratt,* 340 F.2d at 178 (commenting that "whatever strength there may be in the fiction that the vessel is a separate entity" this case involves "different interests"). In sum, *Pratt* appears to support the conclusion that Simpson is not barred by res judicata from now asserting his in rem claim.

Second, even if *Burns Bros.* were persuasive authority in this Circuit, the Second Circuit has recently limited the application of the *Burns Bros.* doctrine in cases filed to collect on unsatisfied judgments, such as the case at hand. *Central Hudson Gas & Electric v. Empresa Naviera Santa,* 56 F.3d 359 (2nd Cir.1995), involved a power company suing in personam to collect on an unsatisfied judgment against the vessel. The vessel owner argued that under *Burns Bros.* the cable company was barred from bringing its in personam suit by res judicata. The Second Circuit distinguished the facts in *Central Hudson* from *Burns Bros.,* noting that

> *Burns Bros.* did not concern a suit filed to collect damages established by a prior judgment, but involved a suit to establish liability and damages anew. *Burns Bros.* thus does not govern a suit essentially

seeking collection of an unpaid portion of a judgment against a joint tortfeasor.

*Id.* at 359.

Thus, although a review of the case law suggests that the subject may not be settled, I conclude, under the authority of *Pratt* and *Central Hudson,* that Simpson is not barred by res judicata from bringing its in rem claim.[3]

### III.

USL next argues that Simpson's in rem claim is barred by laches. Specifically, USL claims that is was prejudiced by Simpson's failure to file a notice of lien prior to USL's making a first mortgage and later refinancing a mortgage on NEMS' ship, the New York 30, and that Simpson's failure to file a lien has forced it to "defend a claim long after the transaction took place" and placed it "at risk of losing a substantial portion of the value of its mortgages."

■ Laches consists of two elements: unreasonable delay and prejudice. *Murphy v. Timberlane Regional School Dist.,* 22 F.3d 1186, 1189 (1st Cir.1994). Laches in an "affirmative defense that serves as a bar to a claim for equitable relief 'where a party's delay in bringing suit was (1) unreasonable, and (2) resulted in prejudice to the opposing party.'" *Id.* (citations omitted). *See also Seattle–First National Bank v. O/S Madrona,* 388 F.Supp. 1076 (D.Alaska 1975).

■ USL's claim of laches is without merit. First, Simpson did not unreasonably delay bringing its claim for past due towing fees. Although almost eight years have passed since NEMS' initial action in 1988, Simpson has never ceased to assert its claim

---

**3.** It is noteworthy that the result in *Pratt* is consistent with the limited maritime case law in this area which, as a general rule, has allowed a second action for purposes of collecting an unsatisfied judgment but barred successive actions that seek to establish new liability and damages. *Compare Central Hudson,* 56 F.3d at 368 (second action not barred because the interests of the Vessel "were not identical" to the interests of the Vessel owners and "a finding of privity in this instance would negate the principle that 'representative capacities must be held separate' in order to ensure vigorous pursuit of litigation") and *Baun v. Ethel,* 125 F.Supp. 835 (D.Alaska

1954) (where seaman brought in rem suit against vessel to collect on unsatisfied judgment in personam, court found that seaman "elected to proceed against the owner alone ... [but] by doing so ... did not waive his right to proceed against the vessel"); *with Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927) (injured seaman barred from bringing second suit based on negligence where he lost first suit which was based on other claims of negligence) and *Larsen v. Teal,* 193 F.Supp. 508 (D.Alaska 1961) (seaman barred from bringing second action in rem where judgment in first case rendered in favor of defendant).

for past towing fees due throughout this period. Indeed, Simpson asserted its claim for towing charges in the first action and was awarded a $122,360.15 judgment on that claim in April 1992 when the litigation ended. In the five months between the completion of the first action and NEMS's filing for bankruptcy, Simpson accepted a $25,000 partial payment towards that judgment.

As stated above, NEMS filed for bankruptcy five months after the first action ended. Simpson filed a proof of claim in the bankruptcy proceedings asserting its right to towing fees owed under its maritime lien for necessaries. NEMS came out of bankruptcy almost two and a half years later in February 1995. USL filed this action in April 1995 and Simpson intervened one month later.

In brief, the evidence simply does not support USL's argument that Simpson rested on its rights or intentionally stalled in asserting them, and although Simpson has only recently asserted its in rem rights to collect on its past towing fees due, it is not barred by any statute of limitations from doing so.

█ Second, Simpson's delay did not result in prejudice to USL. Although USL makes much of Simpson's failure to file a notice of lien, as a provider of necessaries, Simpson was not obligated to file such notice. Under admiralty law, purveyors of necessaries are given an automatic maritime lien upon providing services. *See* 46 U.S.C. § 31342 ("person providing necessaries . . . has a maritime lien on the vessel"). This practice arises from the obvious importance of encouraging purveyors of necessaries to provide them to a vessel.

Relying on *Nat. Shawmut Bank of Boston v. The Winthrop*, 134 F.Supp. 370 (D.Mass. 1955), an admiralty case, USL attempts to analogize its predicament to that of a bona fide purchaser who is innocently unaware of the existence of liens on the property it bought. *See id.* at 372 (preferred mortgage holder may be a bona fide purchaser as to liens "guilty" of laches at the time of the mortgage). The analogy is inapt on the facts of this case. Here, the first ligation initiated by NEMS against Simpson embraced the time period in which USL granted and refinanced a mortgage of the New York 30.

Certainly a sophisticated creditor, such as USL, a subsidiary of Ford Motor Credit Company, which regularly grants ship mortgages, is in a position to learn from the prospective borrower, if necessary, what debts the borrower owed or what judgments had been filed against it and is reasonably chargeable with the knowledge that, under law, purveyors of necessaries to a ship may have unrecorded liens against the ship. That being so, there is no basis for concluding that USL had a right to notification of the lien or that lack of such notification caused it prejudice or injury.

█ Finally, USL's argument that Simpson waived its right to full payment of its towing fees by accepting a partial payment of $25,000 before NEMS filed for bankruptcy is meritless. To establish waiver of a maritime lien, "the party entitled to the lien must [be shown to have] taken affirmative actions that manifest a clear intention to forego the lien." *Farrell Ocean Svcs. v. United States*, 681 F.2d 91, 93 (1st Cir.1982). Moreover, "the acceptance of part payment [does not] lead to the conclusion that the lien has been waived." *Id.* There is no indication in this record that Simpson took any affirmative action to suggest that its acceptance of part payment waived its right to full satisfaction of its maritime lien.

\*   \*   \*   \*   \*   \*

USL's motion is denied. This decision does not preclude further argument on the exact amount owed Simpson for towing services.

It is so ordered.